CARL E. SMITH

V.

DANIEL EMORY HORN

Record No. 831622

November 26, 1986

Present: Cochran, Poff, Compton, Stephenson, Russell, and Thomas, JJ.

*Jack P. Chambers (Gillespie, Chambers, Combs, Altizer and Givens*, on brief), for appellant.

*Wade W. Massie (Penn, Stuart, Eskridge & Jones*, on brief), for appellee.

*Amicus Curiae*: The Virginia Coal Association (*James C. Roberts; Gary J. Spahn; John R. Easter; Mays, Valentine, Davenport & Moore*, on brief), for appellee.

COCHRAN, J., delivered the opinion of the Court.

The dispositive question in this appeal is whether, under the Workers' Compensation Act, an injured employee of one independent contractor is barred from bringing a common-law tort action against an employee of another independent contractor engaged by the same owner.

Carl E. Smith filed his motion for judgment against Daniel Emory Horn and Freddie Rife, alleging that he was injured in a three-vehicle accident proximately caused by the negligence of Horn and Rife. Horn filed a special plea that Smith's law action against him was barred by the Workers' Compensation Act because Smith and Horn were fellow employees under the Act. By order entered July 11, 1983, in which the trial court found that Smith and Horn were statutory employees of Knox Creek Coal Corporation (Knox Creek), the court sustained the special plea and dismissed the action as to Horn. The action proceeded as to Rife and resulted in a verdict and judgment in favor of Rife. No appeal was perfected.

Depositions, which the parties agreed could be used as evidence in respect to the special plea, were submitted to the trial court. Smith testified that he was employed by Carrie Coal Company (Carrie) and at the time of the accident was driving a Carrie pickup truck on company business. Horn testified that he was employed by Ed Potter Coal Company (Potter) and at the time of the accident was driving a loaded Potter truck on company business.

Malcolm Edward Dye, general superintendent of a subsidiary of Knox Creek, testified that Knox Creek was in the business of coal production, contracting with others for the mining of the coal. According to Dye, Potter and Carrie contracted with Knox Creek to mine coal on lands owned or leased by Knox Creek and deliver the coal to the Knox Creek preparation plant at a fixed price per ton. Knox Creek processed the coal, cleaned the impurities from it, and sold it. Dye testified that he supervised the mines "because we retain control where those contractors mine, what coal they mine, the methods of mining that they use, in order to protect [the company's] coal reserves." Knox Creek provided the engineering work, reclamation permits, power lines, substations, roads, mine "faceups," and other items necessary in the operation of the mines. Knox Creek also maintained workers' compensation coverage for employees of the contractors.

The trial court found, on the basis of the depositions, that Carrie and Potter were independent contractors that mine "coal owned or leased" by Knox Creek or its affiliates. The court also found that Knox Creek was engaged in the trade, business, or occupation of mining, processing, and selling coal and that Carrie and Potter and their employees were engaged in the trade, business, or occupation of Knox Creek at the time of the accident, thereby making Knox Creek a statutory employer of Carrie and Potter and their employees and making Smith and Horn statutory fellow employees under the Act. Accordingly, the court ruled that Smith's remedy with respect to Horn was exclusively under the Act.

Code § 65.1-29 provides:

> *Liability of owner to workmen of subcontractors.* — When any person (in this section and §§ 65.1-31 and 65.1-32 referred to as "owner") undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (in this section and §§ 65.1-31 to 65.1-34 referred to as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this Act which he would have been liable to pay if the workman had been immediately employed by him.

The purpose of this and related provisions of the Workers' Compensation Act is to bring within the operation of the Act all persons engaged in work that is part of the trade, business, or occupation of the party who undertakes as owner or who contracts as contractor to perform the work, and to make liable to every employee engaged in the work every such owner, contractor, or subcontractor above such employee. *Anderson* v. *Construction Company*, 201 Va. 266, 271, 110 S.E.2d 396, 399-400 (1959), *appeal dismissed*, 363 U.S. 719 (1960); *Sykes* v. *Stone & Webster Eng. Corp.*, 186 Va. 116, 122, 41 S.E.2d 469, 472 (1947). Code § 65.1-29 contemplates that an owner may perform or execute work that is part of his trade, business, or occupation through contractors and subcontractors, directly employing no workers for the purpose; if the work performed by an employee of the contractor or

subcontractor is part of the owner's trade, business, or occupation, the worker is deemed the statutory employee of the owner, and the owner is liable for compensation as though the worker were his own employee. *Anderson*, 201 Va. at 272-73, 110 S.E.2d at 400-01.

▮ Code § 65.1-40 further provides that workers' compensation is the exclusive remedy for the employee:

> *Employee's rights under Act exclude all others.* — The rights and remedies herein granted to an employee when he and his employer have accepted the provisions of this Act respectively to pay and accept compensation on account of personal injury or death by accident exclude all other rights and remedies of such employee . . ., at common law or otherwise, on account of such injury, loss of service or death.

A common-law action may, however, be brought against an "other party" under Code § 65.1-41. Such other party is one who is a stranger to the employment and the work and who is thus not within the scope of the exclusion of § 65.1-40. *Whalen* v. *Dean Steel Co.*, 229 Va. 164, 167, 327 S.E.2d 102, 104 (1985); *Stewart* v. *Bass Constr. Co.*, 223 Va. 363, 365, 288 S.E.2d 489, 490 (1982); *Anderson*, 201 Va. at 270-71, 110 S.E.2d at 399; *Rea, Administratrix* v. *Ford*, 198 Va. 712, 716, 96 S.E.2d 92, 95 (1957); *Sykes*, 186 Va. at 121, 41 S.E.2d at 471; *Feitig* v. *Chalkley*, 185 Va. 96, 104, 38 S.E.2d 73, 76 (1946). These provisions bar common-law actions between fellow statutory employees while allowing an injured employee of one contractor to proceed in an action at law against another contractor where the two contractors are not engaged in a part of the trade, business, or occupation of the owner. *Compare Anderson*, 201 Va. at 270-72, 110 S.E.2d at 399-400, *with Kramer* v. *Kramer*, 199 Va. 409, 413-19, 100 S.E.2d 37, 40-44 (1957).

The present case is controlled by *Anderson*, where the owner also conducted its business through independent contractors. The owner, Richmond-Petersburg Turnpike Authority, was created by the General Assembly and empowered to construct, maintain, repair, and operate the turnpike. Accordingly, the Authority contracted with a New York engineering firm to serve as consulting engineers for the project. In this capacity, the firm employed resident engineers and inspectors to supervise and inspect each project

involved in construction of the turnpike. The plaintiff, Anderson, was among the employees hired by the engineering firm for this purpose. The Authority hired no work force to construct the turnpike, instead awarding contracts for the various sections of the work to independent contractors. Thorington Construction Company was one such contractor engaged to construct a portion of the turnpike. 201 Va. at 268, 110 S.E.2d at 397-98.

Anderson was assigned to supervise a section of the work being performed by Thorington and two other contractors and, in performance of his duties, was injured. He was paid workers' compensation benefits by the insurance carrier for his employer, the engineering firm. Nevertheless, he sued Thorington at law, alleging he was injured as the result of negligence of Thorington employees. *Id.* at 267-68, 110 S.E.2d at 397-98. We found that both independent contractors, the engineering firm and Thorington, were engaged in the construction of the turnpike, a part of the trade, business, or occupation of the Authority. "[N]either was a stranger to the employment and the work. Both, as well as the Authority, were under the canopy of the [Workers'] Compensation Act." We held that Thorington was not an "other party" subject to an action at law for damages to Anderson under the predecessor to § 65.1-40. *Id.* at 271-72, 110 S.E.2d at 400.

■ Similarly, both Carrie and Potter were independent contractors engaged in the trade, business, or occupation of Knox Creek. Knox Creek's business involved the mining, processing, and sale of coal from properties it owned or leased. Both Carrie and Potter were independent contractors engaged to mine coal on land owned or leased by Knox Creek and to transport the coal to Knox Creek's preparation plant. Horn and Smith, as employees of these two contractors, were performing duties within this purpose — Smith hauling supplies to the Carrie mine and Horn driving a load of coal from the Potter mine to the Knox Creek plant. As both Smith and Horn were acting within the scope of their employment and as both contractors were carrying out a part of the trade, business, or occupation of Knox Creek, Smith and Horn were fellow statutory employees of Knox Creek and Smith's common-law action against Horn was barred under Code § 65.1-40.

Smith contends that the *Anderson* case is no longer controlling precedent, arguing that it has been superseded by cases adopting a different test for determining whether statutory employment exists. *See Cooke v. Skyline Swannanoa,* 226 Va. 154, 158, 307

S.E.2d 246, 248-49 (1983); *Southeastern Tidewater Auth.* v. *Coley*, 221 Va. 859, 863, 275 S.E.2d 589, 591 (1981); *Bassett Furniture* v. *McReynolds*, 216 Va. 897, 902, 224 S.E.2d 323, 326 (1976); *Sun Oil Co.* v. *Lawrence*, 213 Va. 596, 598, 194 S.E.2d 687, 688 (1973); *Shell Oil Co.* v. *Leftwich*, 212 Va. 715, 722, 187 S.E.2d 162, 167 (1972). " 'The test (except in cases where the work is obviously a subcontracted fraction of a main contract) is whether this indispensable activity is, in that business, *normally* carried on through employees rather than independent contractors.' (Emphasis supplied.)" *Shell Oil*, 212 Va. at 722, 187 S.E.2d at 167 (quoting A. Larsen, The Law of Workmen's Compensation § 49.12).

Smith contends that, because the activities of mining and hauling performed by Carrie and Potter were not normally carried on by Knox Creek through its own employees, the quoted passage warrants a finding that Smith and Horn were not statutory employees of Knox Creek. The Virginia Coal Association, on brief as *amicus curiae*, suggests that even under this test we must find Smith and Horn to be statutory employees, contending we must look to the practice of the coal-mining industry in ascertaining whether "in that business" the contracted work is normally performed by employees of the coal companies rather than by independent contractors.

■ We do not agree with Smith's contention that the *Shell Oil* test applies in this case. The express exception to the test requires that it not be applied "where the work is obviously a subcontracted fraction of a main contract." The trial court found, as a factual matter, that Knox Creek's business was the mining, processing, and selling of coal. The contracted work performed by Carrie and Potter, mining and hauling coal to Knox Creek's plant for processing, was unquestionably a fraction of this main business contract. As this case falls within the exception, we need not reach the question whether the business was normally carried on through employees rather than independent contractors. *See Cooke*, 226 Va. at 158-59, 307 S.E.2d at 248-49 (the work of the contractor, operation of a restaurant, was a subcontracted fraction of the licensee's agreement to provide accommodations that included both lodging and food).

Finally, Smith asserts that the Workers' Compensation Act was not intended to cover motor vehicle accidents such as the one from which this action arose. He cites former Code § 38.1-381(i)

(1981), repealed and reenacted in substantially the same form as § 38.2-2207 (1986) (Acts 1986, c. 562), which provided that no motor vehicle liability insurance policy "shall exclude coverage to an employee of the insured in any controversy arising between employees, even though any one employee shall be awarded compensation as provided in [the Workers' Compensation Act]." He contends that this provision demonstrates the General Assembly's intent to exclude motor vehicle accidents from the workers' compensation scheme. We disagree.

■ We believe that, had the General Assembly intended to exclude motor vehicle accidents from the coverage of the Workers' Compensation Act, it would have done so directly in the Act itself rather than indirectly through a provision in the insurance title of the Code. Moreover, former Code § 38.1-43.1 (1981), repealed and reenacted in substantially the same form as § 38.2-900 (1986) (Acts 1986, c. 562), provided that the provisions of the insurance title "shall not amend or repeal" any provisions of the Workers' Compensation Act.

Finding no error in the ruling of the trial court, we will affirm the judgment.

*Affirmed.*