## CIRCUIT COURT OF LOUDOUN COUNTY

Daniel J. Makuta

v.

Xerox Corp. et al.

July 24, 1996

Case No. (Law) 17251

BY JUDGE THOMAS D. HORNE

This personal injury action is before the Court on Defendant Da-Lite Screen Company, Inc.'s Motion in Abatement requesting a dismissal for lack of personal jurisdiction and Defendant Xerox Corporation's Jurisdictional Plea of the Workers' Compensation Bar requesting a dismissal for lack of subject matter jurisdiction. Upon consideration of the arguments by counsel on these matters and the various documents filed in support thereof, the Court finds that it has the authority to exercise personal jurisdiction over Defendant Da-Lite Screen Company, Inc., but not subject matter jurisdiction over Xerox Corporation. Therefore, for the reasons that follow, the instant Motion in Abatement is overruled and the instant Jurisdictional Plea for the Workers' Compensation Bar is sustained.

Except as to how the pertinent statutes should be applied to them, the basic facts germane to the resolution of these pretrial controversies are not in dispute. This litigation arises from an injury suffered by Plaintiff Makuta when, at the conclusion of a seminar he was presenting at the Xerox Document University, an overhead projection screen that he had been using for his presentation detached from its ceiling fixture, swung down, and struck his left arm. Mr. Makuta was the immediate employee of the Graphics Arts Technical Foundation ("GATF") at the time of the incident, and his presentation on graphic arts was given in conjunction

with the Color '94 Convention held at the Xerox Document University in Loudoun County, Virginia. The overhead screen that fell into Mr. Makuta was alleged to have been supplied by Defendant Xerox Corporation, manufactured by Defendant Da-Lite Screen Company, Inc., purchased by Xerox from a third defendant, Ritz Audio-Visual Associates, Inc., and installed by one of the three named defendants.

### Personal Jurisdiction

Asserting it does not transact business in Virginia to the extent that this Court can exercise personal jurisdiction over it, Defendant Da-Lite moves the Court to dismiss this action as to it.[1] In support of its Motion in Abatement, Da-Lite adduces an affidavit of its Vice President of Finance, Jerry Bingle, who states that Da-Lite is an Indiana corporation, with its main office in Warsaw, Indiana, and with plants in Indiana, Ohio, and Kansas. Da-Lite, according to Mr. Bingle, has no offices, plants, or employees based in Virginia. Its only contact with the Commonwealth is a sales representative based in Maryland who periodically makes sales calls on Da-Lite's customers in Virginia. Those customers, however, send their orders directly to Da-Lite's main office in Warsaw.

Plaintiff Makuta counters Da-Lite's motion with the contention that Da-Lite's business activities in Virginia put it within the ambit of §§ 8.01-328.1(A)(1) and 8.01-328.1(A)(4), thus placing Da-Lite under this Court's jurisdiction. In support thereof, Makuta offers the deposition of Sam Gremillion, Da-Lite's sales consultant in Delaware, Maryland, and Virginia. Among other things, Mr. Gremillion testifies that he is indeed employed by Da-Lite; that he is paid on a commission basis; that he distributes promotional Da-Lite literature to dealers in Virginia; that he phones or visits the approximate 180 to 200 established dealers of Da-Lite products in Virginia; that his duties include introducing new products to those deal-

---

[1] Da-Lite's Motion in Abatement reads in its entirety: "Defendant Da-Lite Screen Company moves the Court for an Order dismissing the Motion for Judgment as to it on the ground of lack of jurisdiction. This Defendant does not transact business in the Commonwealth of Virginia as defined in § 13.1-757 of the Virginia Code (affidavit attached)." Da-Lite's apparent reliance here solely on § 13.1-757 is, in the Court's opinion, misguided. Mr. Makuta does not invoke § 13.1-757 as a basis for personal jurisdiction. He relies, rather, on Virginia's Long Arm Statute, Virginia Code § 8.01-328.1. The Court proceeds, therefore, on the assumption that Da-Lite's apparent reliance on § 13.1-757 derives from a misunderstanding and that Da-Lite's motion is intended to challenge long-arm jurisdiction.

ers, assisting them with shipping delays, warranty questions, or damaged goods, and helping them with any other problems related to Da-Lite products; that Da-Lite annually grosses approximately 1.7 million dollars from merchandise sales in Maryland and Virginia combined, of which at least one million dollars a year is thought to come from sales in Virginia; that Da-Lite sends promotional letters to its dealers in Virginia soliciting business; and that his customers do not place their orders through him but directly with Da-Lite's main office in Warsaw, Indiana.

The issue before the Court, then, is whether Da-Lite's business activities in Virginia are sufficient under Virginia's Long Arm Statute, Virginia Code § 8.01-328.1, to subject Da-Lite to the personal jurisdiction of this Court. Personal jurisdiction analysis under Virginia's Long Arm Statute is a two-step process. First, the Court must determine, as a matter of statutory interpretation, whether the language of § 8.01-328.1 reaches Da-Lite's conduct with respect to each of the alleged causes of action brought against Da-Lite. If it does not, personal jurisdiction cannot be asserted under the Long Arm Statute for that cause of action. If, however, Da-Lite's conduct does fall within the ambit of any of the Statute's provisions, the Court must then determine whether Da-Lite's contacts with Virginia are sufficient to satisfy the due process requirements of the United States Constitution. *Peanut Corp. of America v. Hollywood Brands, Inc.*, 696 F.2d 311, 313 (4th Cir. 1982).

In pertinent part, Virginia's Long Arm Statute provides:

> (A) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's:
>
> 1. Transacting any business in this Commonwealth;
>
> 2. Contracting to supply services or things in this Commonwealth;
>
> 3. Causing tortious injury by an act or omission in this Commonwealth;
>
> 4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business or engages in any other persistent course of conduct or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth;
>
> 5. Causing injury in this Commonwealth to any person by breach of warranty expressly or impliedly made in the sale of goods outside this Commonwealth when he might reasonably

have expected such person to use, consume, or be affected by the goods in this Commonwealth, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth
. . . .

(B) When jurisdiction over a person is based solely on this section, only a cause of action arising from acts enumerated in this section may be asserted against him.

Va. Code Ann. § 8.01-328.1. The Supreme Court of Virginia, in construing the extent of *in personam* jurisdiction under Virginia's Long Arm Statute, opined that the purpose of the statute "is to assert jurisdiction over non-residents who engage in some purposeful activity in this State to the extent permissible under the due process clause." *Kolbe, Inc. v. Chromodern Chair Co.*, 211 Va. 736, 740 (1971).

Plaintiff Makuta asserts four causes of action against Da-Lite. Count III of the Amended Motion for Judgment sets forth a *prima facie* showing that Da-Lite, in negligently installing the overhead screen at the Xerox Document University in Loudoun County, caused tortious injury to the Plaintiff by an act or omission in Virginia. Clearly, then, § 8.01-328.1(A)(3) applies to Count III. Subsection (A)(3) also applies to Count XII of the Amended Motion for Judgment which asserts a *prima facie* cause of action against Da-Lite for failure to warn the Plaintiff about the defective screen, a tort of omission which can be said to have occurred in Virginia where the injury was inflicted.

Count VI of the Amended Motion for Judgment alleges that Da-Lite, through its negligence in the design, testing, manufacture, inspection, marketing, distribution, and promotion of the overhead screen, all of which apparently occurred at Da-Lite's headquarters in Indiana or at one of its plants in Indiana, Ohio, or Kansas, caused tortious injury to the Plaintiff in Virginia at the Xerox Document University in Loudoun County. Furthermore, it appears from Mr. Gremillion's deposition that Da-Lite regularly solicits business in Virginia through Mr. Gremillion and derives substantial revenue (approximately $1 million annually) from goods used or consumed in Virginia. This Court may therefore exercise personal jurisdiction over Da-Lite with respect to the cause of action asserted in Count VI of the Amended Motion for Judgment under § 8.01-328.1(A)(4).

Count IX of the Amended Motion for Judgment asserts a claim for breach of implied warranties, alleging that Da-Lite impliedly warranted

that the overhead screen was merchantable and was fit for the particular purpose for which it was purchased and that Da-Lite breached those warranties resulting in injury to Mr. Makuta in Virginia. Having already determined above that Da-Lite regularly solicits business in Virginia and derives substantial revenue from goods used or consumed in Virginia, the Court, in determining whether § 8.01-328.1(A)(5) applies here, need only ascertain whether the sale of the screen took place outside Virginia and whether Da-Lite might reasonably have expected that the screen would be used in Virginia by Mr. Makuta.

Having no evidence before it concerning the sales history of the individual subject screen, the Court looks to the evidence in Mr. Bingle's affidavit and Mr. Gremillion's deposition regarding Da-Lite's normal sales practice and finds therefrom that, for purposes of this issue, the screen was purchased in Indiana. Mr. Bingle states in his affidavit that Da-Lite's "customers send any orders directly to Da-Lite's main office in Warsaw" and that "[t]here is no contract until the Order is received in Indiana." Mr. Gremillion confirms in his deposition that his customers place their orders not through him but directly with Da-Lite's main office in Indiana. Proceeding logically, the Court finds further that even though the screen was technically sold in Indiana, based on the fact that Da-Lite had a sales consultant who frequented Virginia and many dealers who marketed its products in Virginia, Da-Lite clearly had every reason to expect that the screen would end up in Virginia where individuals such as Mr. Makuta would use it. Therefore, the Court finds that it has authority under § 8.01-328.1(A)(5) to exercise *in personam* jurisdiction over Da-Lite for the warranty claim alleged in Count IX of the Amended Motion for Judgment.[2]

Turning to the due process analysis, it is apparent that forcing Da-Lite to defend a lawsuit in Virginia does not violate traditional notions of fair play and due process. *International Shoe Co. v. Washington*, 326 U.S. 310 (1945). Da-Lite regularly solicits business throughout the Commonwealth using its Mid-Atlantic sales consultant to contact its numerous dealers in Virginia. Moreover, while the solicitation of business is ostensibly his primary duty, Da-Lite's agent also assists the dealers with any problems involving shipping delays, warranty questions, damaged goods, or any other Da-Lite-product-related concerns. The consultant apparently places

---

[2] Finding as it has that all of the four asserted causes of action against Da-Lite warrant personal jurisdiction under the Long Arm Statute, the Court need not address § 8.01-328.1(A)(1)'s applicability here.

no orders himself, but his activities clearly are intended to further develop Da-Lite's market in Virginia and to allow Da-Lite to reap the economic benefits of that increased business. Such conduct, in the Court's view, manifestly evinces Da-Lite's purposeful availment of the privilege of conducting activities within Virginia, thus invoking the benefits and protections of the laws of the Commonwealth. *Hanson v. Denckla*, 357 U.S. 235 (1958). Accordingly, the Court has no hesitation in finding that there exists minimum contacts between Da-Lite and Virginia such that this Court's exercise of personal jurisdiction over Da-Lite does not exceed the parameters of constitutional guarantees of due process. Consequently, Defendant Da-Lite's Motion in Abatement is denied.

### Subject Matter Jurisdiction

This matter is before the Court on Defendant Xerox's Jurisdictional Plea of the Workers' Compensation Bar. In that plea, Xerox moves to dismiss this action as to it on the grounds that Plaintiff Makuta was its statutory employee at the time he suffered the alleged injury and that this Court, therefore, has no jurisdiction over the tort claims brought against Xerox.

It is well settled in Virginia that a person injured in the course of his employment may not sue his employer in tort. *Griffith v. Raven Red Ash Coal Co.*, 179 Va. 790 (1942). Neither may he under those circumstances maintain a common law action in tort against his "statutory employer," as defined in Virginia Code § 65.2-302. *See Ford v. City of Richmond*, 239 Va. 664, 669 (1990). Such claims are barred by Virginia Code § 65.2-307, which provides that the injured person's remedy lies exclusively in his workers' compensation benefits as set forth in the Virginia Workers' Compensation Act. Subject matter jurisdiction would rest, in that case, with the Virginia Workers' Compensation Commission. Va. Code Ann. § 65.2-201.

Mr. Makuta contends that Xerox does not fall within § 65.2-302's definition of "statutory employer," thus rendering § 65.2-307 inapplicable to these facts and preserving Mr. Makuta's right to maintain an action at common law against Xerox. It is his position that the work he was engaged in was not part of the trade, business, or occupation of Xerox and that, therefore, Xerox is a party against whom he may bring a common law action.

In pertinent part, § 65.2-302(A) provides:

> When any person (referred to in this section as "owner") undertakes to perform or execute any work which is part of his trade, business, or occupation and contracts with any person

(referred to in this section as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any worker employed in the work any compensation under this title which he would have been liable to pay if the worker had been immediately employed by him.

Accordingly, the determinative issue is whether, at the time of his injury, Mr. Makuta was engaged in work that was part of Xerox's trade, business, or occupation. If so, Xerox was Mr. Makuta's statutory employer, thus limiting him to the benefits and compensation under the Workers' Compensation Act and precluding him from instituting or maintaining a suit at common law against Xerox. *Henderson v. Central Tel. Co.*, 233 Va. 377, 379 (1987).

Determining whether an injured worker was engaged in a company's trade, business, or occupation is not "a simple, straightforward exercise." *Id.* at 382. It is "a mixed question of law and fact" which "depends upon the facts and circumstances in each case, and for that reason, the question does not readily yield to categorical or absolute standards." *Bassett Furniture v. McReynolds*, 216 Va. 897, 899, 902 (1976).

The relevant facts underlying the instant issue in this case are to be found in the admissions made by Mr. Makuta in response to Xerox's request for admissions. Pursuant to those admissions, the Court finds that (1) Mr. Makuta was acting, at the time of the accident, within the scope of his employment for GATF; (2) GATF had contracted with Xerox for Mr. Makuta's presentation; (3) the Color '94 Convention included courses taught by both employees of Xerox and outside specialists; (4) Mr. Makuta was, at the time of the accident, participating as an instructor in a seminar which was part of Xerox's training of its employees; (5) the audience to whom Mr. Makuta was presenting his seminar was comprised of Xerox employees; and (6) Mr. Makuta's presentation was part of an agenda and seminar prepared and presented respectively by Xerox for the purpose of training its employees.

There can be little doubt, then, based on the Plaintiff's own admissions, that Mr. Makuta suffered his injury while engaged, as the employee of the independent contractor, in the training of Xerox employees at Xerox Document University. His presentation was, as he himself admits, part of a seminar given for the purpose of instructing and training Xerox employees. Mr. Makuta further bolsters this finding when he states in his response to Xerox's plea that the purpose of his presentation was "to train people

on the use of desktop publishing and color-on-demand" and that his role, at the time the injury occurred, was "training personnel on the use of desktop publishing systems."

Having found then that the Plaintiff was engaged in the work of training Xerox employees when the alleged injury occurred, the sole question remaining for the Court's resolution is whether the training of Xerox employees is, pursuant to § 65.2-302, Xerox's trade, business, or occupation. Mr. Makuta offers essentially a three-prong argument against such a finding.

Relying heavily on *Intermodal Services, Inc. v. Smith*, 234 Va. 596 (1988), Mr. Makuta first contends that, because Xerox exerted no control over him, he was not Xerox's statutory employee. In making that argument, Mr. Makuta relies exclusively on *Intermodal Services, Inc. v. Smith*, 234 Va. 596 (1988). In the Court's opinion, however, such reliance is wholly inappropriate since the issue of control is not relevant to the matter at hand. The Supreme Court of Virginia's consideration in *Intermodal* of whether the defendant "controlled" the injured worker was aimed exclusively at determining whether the worker was an "employee" of the defendant. The issue of control was determinative only in that regard. It was not revisited when the Court in *Intermodal*, after determining that the worker was not an employee of the defendant, turned to the separate issue of whether the worker was a "statutory employee" of the defendant. *Id.* at 602. It is, therefore, inapposite to the resolution of the instant case.

Secondly, relying on the test established by the Supreme Court of Virginia in *Shell Oil Co. v. Leftwich*, 212 Va. 715 (1972), Mr. Makuta asserts that Xerox has produced no evidence to show that Xerox *normally* uses its own employees to train its personnel. Having perused the numerous cases relating to this matter, the Court observes that the *Shell Oil* test, while perhaps the one most often cited, is but one of many tests developed by the courts to assist in the determination, under § 65.2-302, of whether the particular work engaged in by an injured worker is the trade, business, or occupation of the owner. The dispositive factor, according to the *Shell Oil* test, is whether the injured worker's "activity is, in that business, *normally* carried on through employees rather than independent contractors." *Id.* at 722.

The only evidence presented by Xerox in support of the instant plea are the aforementioned responses of Mr. Makuta to Xerox's request for admissions. While the Plaintiff does admit that employees of Xerox were teaching courses at the Color '94 Convention and that Xerox was respon-

sible for preparing and presenting the convention for the purpose of training its personnel, nothing in the record supports the conclusion that Xerox *normally* used its own employees, rather than independent contractors, to train its personnel.[3] The Court adds, however, that, in its opinion, such a finding is not dispositive. The *Shell Oil* test, after all, is not, according to the Virginia Supreme Court, always the appropriate guide to employ in resolving inquiries of this nature. When faced, for example, with a similar inquiry in *Cinnamon v. International Business Machines*, 238 Va. 471 (1989), the Court, in reflecting initially on its holding in *Smith v. Horn*, 232 Va. 302 (1986), and then in turning to the case before it, said:

> Because the work of mining the coal was unquestionably part of the mine owner's trade, business, or occupation (the mining, processing, and sale of coal), a part performed by independent contractors engaged by the mine owner, we found it unnecessary to determine whether the normal work prong of the *Shell Oil* test was satisfied.
>
> Here, we find it unnecessary to apply either prong of the *Shell Oil* test. Indeed, that test is only a corollary guide, sometimes useful but not indispensable, in applying the literal language of the statutes to the facts in a particular case. [Footnote: "[A]ny guide to statutory construction . . . only serves as an aid for resolving an ambiguity; it is not to be used to beget one." *Callahan v. United States*, 364 U.S. 587, 596 (1961) (footnote omitted).] In the case at bar, we need determine only whether (1) IBM, an owner, engaged an independent contractor (2) to "perform . . . work which is part of [IBM's] trade, business, or occupation" within the contemplation of Code [§ 65.2-302]. If so, IBM is Cinnamon's statutory employer.

*Cinnamon*, 238 Va. at 478 (omissions and alterations, except final alteration, in original). Clearly, then, a court need not apply the *Shell Oil* test when, as here, no ambiguity exists as to whether the work engaged in by the injured worker is part of the owner's trade, business, or occupation.

Hence, as it requires no assistance in construing § 65.2-302 in this matter, the Court finds the *Shell Oil* test dispensable and concludes that, regardless of whether or not Xerox *normally* used its own employees to

---

[3] It should also be noted, however, that nothing in the record contradicts such a conclusion either.

train its personnel, the training of its personnel is inherently part of the trade, business, or occupation of a company such as Xerox. Mr. Makuta himself admitted that Xerox was involved in the training of its personnel, both through its own instructors and contracted specialists. Furthermore, that Xerox owned, operated, and maintained the Xerox Document University, a training facility in which the Plaintiff, himself, trained Xerox employees, strongly evinces Xerox's involvement in and commitment to the business of training its employees.

Finally, Mr. Makuta makes the argument that, while Xerox might use its own employees to train its personnel in some subjects, the training he provided on the use of desktop publishing and color-on-demand was of such a highly specialized nature that it transcended the instruction normally provided by Xerox employees. Consequently, Xerox was forced to contract that aspect of its training curriculum out to specialists like him. The work in which he was engaged when he was injured, therefore, was not part of Xerox's trade, business, or occupation.

Xerox does not concede Mr. Makuta's assertions that his or like seminars were not normally taught by Xerox's own instructors. Neither, though, does Xerox produce evidence to refute them. Regardless, though, of the validity of the Plaintiff's assertions, the Court finds Mr. Makuta's argument untenable. Section § 65.2-302 is meant to encompass workers who, although not employees of the owner, are engaged in the sort of work for an owner which would otherwise have to be undertaken by the owner's actual employees.

> Code § [65.2-392(A)] contemplates that an owner may perform or execute work that is part of his trade, business, or occupation through contractors and subcontractors, directly employing no workers for the purpose; if the work performed by an employee of the contractor or subcontractor is part of the owner's trade, business, or occupation, the worker is deemed the statutory employee of the owner, and the owner is liable for compensation as though the worker were his own employee.

*Smith v. Horn*, 232 Va. 302, 305 (1986). Therefore, whether Xerox actually used its own employees to normally teach seminars in advanced color graphics is immaterial. *See also Carmody v. F. W. Woolworth Co.*, 234 Va. 198, 205, 206 (1987) (determining that, even though defendant's employees were not trained in the work in which plaintiff was engaged and defendant had chosen not to participate directly in that work, plaintiff's

work was still part of defendant's business, albeit a part conducted through an independent contractor); *Henderson v. Central Tel. Co.*, 233 Va. 377, 385 (1987) (deciding that, even though the defendant did not normally install the precise type of equipment that the plaintiff was installing, the installation of that type of equipment was nevertheless part of the defendant's trade, business, or occupation).

What does matter, though, is that (1) Mr. Makuta, while an employee of GATF, which had contracted with Xerox for his presentation, was engaged in the training of Xerox's employees at the time he was injured and (2) the training of its employees is part of Xerox's business, trade, or occupation. The Court, therefore, concludes that, when the Plaintiff was injured, he was engaged in the trade, business, or occupation of Xerox. Accordingly, Xerox was Mr. Makuta's statutory employer within the meaning of § 65.2-302 at the time the injury occurred. Plaintiff Makuta's claims against Xerox are therefore barred by the exclusivity provision in the Virginia Workers' Compensation Act. Consequently, Xerox's Jurisdictional Plea of the Workers' Compensation Bar is sustained, and this case is dismissed as to Defendant Xerox.