**Charles H. BOWLING, Plaintiff–Appellant,**

v.

**WELLMORE COAL CORPORATION, Defendant–Appellee.**

No. 96–1339.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 28, 1996.

Decided May 23, 1997.

---

## I.

This appeal arises from a tort action commenced by Charles H. Bowling ("Bowling") against the Wellmore Coal Corporation ("Wellmore") for injuries sustained when a Wellmore employee negligently operated a company coal preparation facility to which Bowling delivered coal. Bowling filed his civil suit against Wellmore on December 12, 1991.

Wellmore moved for summary judgment arguing that it was the "statutory employer" of Bowling and, as such, could not be subject to a negligence action filed by Bowling. Negligence actions against statutory employers are barred under Virginia's workers' compensation law. Va.Code § 65.2–302. Bowling moved for partial summary judgment, claiming that Wellmore was not his statutory employer but rather an "other party" under the workers' compensation law, Va.Code § 65.2–309, and thus subject to a negligence claim.[1]

After determining that Wellmore was Bowling's statutory employer, the district court granted summary judgment for Wellmore and barred Bowling from bringing an action in negligence against the company. We agree with the reasoning and conclusions of the court below.

## II.

Wellmore is a Virginia corporation with its principal place of business in Buchanan County, Virginia. Wellmore's immediate employees are primarily involved in the business of processing coal as it is brought from the mines. At the time Bowling was injured, Wellmore operated four active processing plants—three in Virginia and another in Kentucky. In addition to its processing business, Wellmore either owned or leased coal mines from which the company received its raw materials. When the accident in question occurred, Wellmore owned or leased approximately thirty coal mines. The production of coal from each mine was contracted out to various mining companies, which in

**ARGUED:** Walton Davis Morris, Jr., Charlottesville, VA, for Appellant. Carl E. McAfee, McAfee & Associates, P.C., Norton, VA, for Appellee. **ON BRIEF:** Harold R. Montgomery, Jonesville, VA, for Appellant.

Before WIDENER and ERVIN, Circuit Judges, and BULLOCK, Chief United States District Judge for the Middle District of North Carolina, sitting by designation.

Affirmed by published opinion. Judge ERVIN wrote the opinion, in which Judge WIDENER and Chief Judge BULLOCK joined.

## OPINION

ERVIN, Circuit Judge.

Charles H. Bowling appeals from a decision of the United States District Court for the Western District of Virginia granting summary judgment in favor of Wellmore Coal Corporation in an action for the recovery of damages for personal injuries. For the reasons hereinafter explored, we affirm.

---

1. Bowling has already recovered workers' compensation benefits from his immediate employer, Trivette Trucking Company.

turn contracted with trucking companies to haul the coal from the mine site to Wellmore's processing plants.

In 1990, Bowling was employed as a truck driver for Trivette Trucking Company ("Trivette"). Trivette had contracted with Kodiak Coal Incorporated ("Kodiak") to haul coal from Kodiak's Mine No. 2 in Floyd County, Kentucky, to the Wellmore processing plants. Kodiak was the mine contractor for Wellmore, and the mine itself had been leased to Wellmore by its owner, the Elk Horn Coal Corporation. On March 14, 1990, pursuant to the Trivette–Kodiak contract, Bowling picked up a load of coal from the Kodiak mine and delivered it to the Wellmore No. 7 loading and preparation facility in Big Rock, Virginia. While on the Wellmore premises, Bowling backed his truck onto a stockpile of coal in order to unload. A trap door in the stockpile had been left open, however, causing Bowling's truck to fall through the hole and turn over on its side. Bowling was pinned between the steering wheel and the door of the truck and suffered severe injuries as a result of the accident.

Most of the coal received at Wellmore's processing plants was delivered by independent trucking companies that worked directly with the mine operators, although Wellmore did maintain a few trucks that were occasionally used for hauling during faceups [2] and in emergencies. Approximately one-third of Wellmore's employees were capable of hauling coal, but hauling accounted for less than ten percent of their job duties. Wellmore never hauled coal from the Kodiak mine to its processing plants.

Wellmore retained little control over the selection, training and supervision of the truckers used to deliver coal to its preparation plants. Those responsibilities, in addition to the day-to-day mining operations, were left to the contract mining companies. Further, under the contract between Wellmore and Kodiak, Kodiak was required to obtain workers' compensation and employers' liability insurance. If Kodiak failed to pro-

vide this insurance, Wellmore agreed to do so and to hold Kodiak liable for the cost.

Wellmore had only indirect contact with the trucking companies until the trucks actually arrived at a preparation plant. Once on the plant premises, Wellmore's loader operator would direct the truckers as to where to dump their loads. If the loader operator knew of a safety risk to the truck drivers, he was expected to warn the drivers of it when they arrived at the site.

### III.

We review grants of summary judgment *de novo. Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir.1991); *Higgins v. E.I. DuPont De Nemours & Co.*, 863 F.2d 1162, 1166–67 (4th Cir.1988).

In reviewing a grant of summary judgment, we apply the same standards as the district court, and summary judgment is appropriate where there is no genuine issue of material fact. Fed.R.Civ.P. 56(c); *Miller v. FDIC*, 906 F.2d 972, 974 (4th Cir.1990). We are not constrained by the grounds upon which the district court relied but may affirm the decision below on any legal ground supported in the record. *Jackson v. Kimel*, 992 F.2d 1318, 1322 (4th Cir.1993).

The facts of the instant case are not in dispute, but interpreting the facts to determine whether or not hauling coal was part of Wellmore's regular business is essential to a proper application of the law. Thus, because we are faced with issues of law raised on appeal, we engage in a *de novo* review of the district court's conclusions. *Bose Corp. v. Consumers Union of the United States, Inc.*, 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984); *Rawl v. United States*, 778 F.2d 1009, 1014 (4th Cir.1985), *cert. denied*, 479 U.S. 814, 107 S.Ct. 67, 93 L.Ed.2d 25 (1986). *See also Waters v. Gaston County, N.C.*, 57 F.3d 422, 425 (4th Cir.1995).

### IV.

■ Wellmore is not liable in a negligence action if it is the "statutory employer" of

---

**2.** Facing up a mine entails making the necessary surface preparations for deep mining by excavat-

ing and hauling surface materials.

Bowling. Virginia's workers' compensation law explains that an employer is a statutory employer when the work in which an injured worker was engaged is the employer's "trade, business or occupation":

> Statutory Employer.
>
> A. When any person (referred to in this section as "owner") undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (referred to in this section as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any worker employed in the work any compensation under this title which he would have been liable to pay if the worker had been immediately employed by him.
>
> B. When any person (referred to in this section as "contractor") contracts to perform or execute any work for another person which work or undertaking is not a part of the trade, business or occupation of such other person and contracts with any other person (referred to in this section as "subcontractor") for the execution or performance by or under the subcontractor of the whole or any part of the work undertaken by such contractor, then the contractor shall be liable to pay to any worker employed in the work any compensation under this title which he would have been liable to pay if that worker had been immediately employed by him.

Va.Code § 65.2–302.

The Virginia Supreme Court has fashioned criteria to aid in determining whether an activity is within an owner's trade, business or occupation. That court has adopted a useful test set out in Arthur Larsen's treatise, The Law of Workmen's Compensation:

> [T]he test is not one of whether the subcontractor's activity is useful, necessary, or even absolutely indispensable to the statutory employer's business.... The test

(except in cases where the work is obviously a subcontracted fraction of a main contract) is whether this indispensable activity is, in that business, *normally* carried on through employees rather than independent contractors.

*Shell Oil Co. v. Leftwich,* 212 Va. 715, 187 S.E.2d 162, 167 (1972) (quoting 1A Arthur Larsen, The Law of Workmen's Compensation § 49.12, at 872–73) (emphasis supplied by the court).[3]

In its application of the *Shell* test, Wellmore does not contend that the mining and hauling of coal are activities which it normally carries on through employees; rather, the company argues that mining and hauling constitute a "subcontracted fraction" of its main business.

We agree with the district court's conclusion that "[i]n spite of [Wellmore's] decision to use independent contractors in its mining and hauling functions, those functions are an essential and integral part of its business purpose." *Bowling v. Wellmore Coal Corp.,* No. 91–20196–A, slip op. at 5 (W.D.Va. Feb. 16, 1996).[4] Thus, on the undisputed facts of this case, we conclude that hauling coal from Kodiak mine No. 2 to the Wellmore processing facility was a subcontracted fraction of Wellmore's main business concern and, therefore, that Wellmore is Bowling's statutory employer for purposes of filing a negligence action.

### V.

The seminal case applying the subcontracted fraction exception of the *Shell* test is *Smith v. Horn,* 232 Va. 302, 351 S.E.2d 14 (1986). In *Smith,* two independent contractors were engaged to mine coal on land owned or leased by the defendant company and to transport coal to the owner's plant for processing. *Id.* 351 S.E.2d at 15. The owner was held to be the statutory employer of the employees of the independent contractors for purposes of the workers' compensation law because the employees were carrying out

---

3. We refer to this rule as the *Shell* test and to the language in parentheses as the "subcontracted fraction exception" to the test.

4. The determination of law that an act is part of a company's "trade, business or occupation" *is* highly fact dependent. *See Bassett Furniture Indus., Inc. v. McReynolds,* 216 Va. 897, 224 S.E.2d 323, 326 (1976).

a subcontracted fraction of the owner's main concern. *Id.* We find *Smith* to be controlling as to the instant case.

Bowling contests the application of the subcontracted fraction exception on three grounds: (1) the exception only applies to contractors, not owners; (2) the rationale employed by the *Smith* court has been superseded; and (3) the facts of the instant case do not show that hauling coal is part of Wellmore's trade, business or occupation. We address each in turn.

### A.

■ First, Bowling argues that the exception does not apply because Wellmore is not a contractor within the meaning of the Virginia workers' compensation law. Wellmore does not contend that it wears any label but that of "owner" pursuant to Virginia Code § 65.2–302(A).

Virginia case law does not indicate, as Bowling suggests, that the subcontracted fraction exception applies only to "contractors" who contract to perform work for other entities. In *Smith*, the *owner* of the mining company was found to be the statutory employer of the plaintiff under the exception and the court did not limit the exception to contractors. *Smith* at 15.[5]

Four years after the *Shell* court crafted the test and the exception, the Virginia Supreme Court reiterated the purpose of the statutes governing eligibility under the Workmen's (now Workers') Compensation Act:

> It clearly appears to be the purpose ... to bring within the operation of the Compensation Act all persons engaged in any work that is a part of the trade, business or occupation of the original party who undertakes as *owner, or contracts as contractor*, to perform that work, and to make liable to employe[e] engaged in that work every such owner, or contractor, and subcontractor, above such employe[e].

*Bassett Furniture Indus., Inc. v. McReynolds*, 216 Va. 897, 224 S.E.2d 323, 326 (1976) (quoting *Sykes v. Stone & Webster Eng'g. Corp.*, 186 Va. 116, 41 S.E.2d 469, 471 (1947)) (emphasis added). *Bassett* specifically adopts the *Shell* test and exception, applying the exception to owners.

Bowling points out that the current Virginia workers' compensation law distinguishes between owners and contractors. Va.Code § 65.2–302(A) and (B). However, Bowling is not aided by this distinction. First, § 65.2–302(A) defines owners as statutory employers when they "undertake to perform or execute any work which is part of [their] trade, business or occupation and contract with any other person ... for the execution or performance ... of the whole or any part of the work...." Subsection (B) only establishes contractors as statutory employers when an accident arises out of a subcontracted fraction of a contract which is "*not* a part of the trade, business or occupation of" the owner. *Id.* at § 65.2–302(B) (emphasis added).

Further, the *Smith* court interpreted the workers' compensation statute as follows:

> Code § 65.1–29 [currently § 65.2–302] contemplates that an owner may perform or execute work that is part of his trade, business, or occupation through contractors and subcontractors, directly employing no workers for the purpose; if the work performed by an employee of the contractor or subcontractor is part of the owner's trade, business, or occupation, the worker is deemed the statutory employee of the owner, and the owner is liable for compensation as though the worker were his own employee.

*Smith*, 351 S.E.2d at 16 (citing *Anderson v. Construction Co.*, 201 Va. 266, 110 S.E.2d 396, 400–01 (1959), *appeal dismissed*, 363 U.S. 719, 80 S.Ct. 1596, 4 L.Ed.2d 1521 (1960)). The court below concluded that hauling coal is part of Wellmore's "trade, business, or occupation" and, therefore, ap-

---

5. The *Smith* court spoke of the exception to the *Shell* test as applying when work was a subcontracted fraction of a "main business concern" rather than a "main contract" as originally stated in *Shell. Smith,* 351 S.E.2d at 17, 18. This variation on the original further refutes Bowl-

ing's contention that, before the exception can be implicated, *Smith* requires a " 'main business contract' between Wellmore and a principal that required Wellmore to mine and haul coal." Br. of Appellant at 6.

plied the subcontracted fraction exception. We hold that the district court did not err in reaching this conclusion, and we thus conclude that the subcontracted fraction exception applies to Wellmore as an owner.

### B.

In Bowling's second main argument, he contends that the holding in *Smith* is "completely inconsistent with subsequent Virginia case law" and, therefore, wrongly relied upon by the court below. Br. of Appellant at 17. We disagree.

To support his claim that *Smith* is no longer good law, Bowling points to the Virginia Supreme Court's language where it simply expressed that it would not use the same criteria to evaluate whether a claimant was engaged in the business of a private owner as it used with regard to an owner which was a public entity. *Johnson v. Jefferson National Bank,* 244 Va. 482, 422 S.E.2d 778, 780 n. 1 (1992).[6] From this notation in *Johnson,* Bowling reasons that, since *Smith* cited *Anderson v. Thorington Construction Co.,* 201 Va. 266, 110 S.E.2d 396 (1959), with approval, and since the owner in *Anderson* was a public entity (the Richmond–Petersburg Turnpike Authority), then *Smith* "is no longer authoritative on the issue of a private owner's 'trade, business or occupation.'" Br. of Appellant at 18. We reject this strained interpretation of the relationship between *Johnson, Smith,* and *Anderson.*

The fact that the owner in *Anderson* was a public entity was not material to the *Smith* court's reliance on that case. Because the owner in *Anderson* was a public entity, that court looked to the enabling language of the Virginia General Assembly for guidance in determining those duties with which the transit authority was charged. *Anderson,* 110 S.E.2d at 397, 400–01. *Smith,* however, clearly relied on the subcontracted fraction exception to the *Shell* test to make its deter-

mination. The footnote in *Johnson* on which Bowling relies simply indicates the court's decision not to apply to private owners the rules used to decide whether a public owner is a statutory employer. As a public entity case, *Johnson* does not lessen the applicability of the *Shell* test or its exception to private owners, and *Smith* actually confirms the continued existence of both.

Bowling also contends that the subcontracted fraction exception is no longer viable because of the Virginia Supreme Court's decision not to apply it in *Salih v. Lane,* 244 Va. 436, 423 S.E.2d 192 (1992), in which a nurse anesthetist brought a damage suit against a psychiatrist for injuries allegedly received during administration of electric shock therapy to a patient. In that case, the court did not question the continued validity of the subcontracted fraction exception; rather, the court simply held that the facts of the case did not allow for analysis under the exception. *Id.* 423 S.E.2d at 196–97. By citing the *Shell* test and its exception and subsequently concluding that neither should be employed under the facts of that case, the *Salih* court gave further evidence that both survive.

*Shell's* progeny reveal that the test and the exception are still binding law.

### C.

Bowling argues finally that, even if the subcontracted fraction exception is still good law, the facts of this case do not reveal that his hauling of coal was part of Wellmore's trade, business or occupation under Virginia's workers' compensation law. Again, we disagree.

Bowling points out that, while Wellmore owned or leased the numerous mines from which its coal was taken, Wellmore neither controlled nor supported the activities of its miners or haulers. In fact, Wellmore's con-

---

**6.** The *Johnson* court did not announce a new rule. The Virginia Supreme Court had previously made it clear that different methods would be used to evaluate whether an owner was a statutory employer depending on the private versus public status of the owner:

> The *Shell Oil Co.* test has never been applied by this Court in a case involving either a public

> utility or a governmental concern. . . . It is not simply what they do that defines their trade, business, or occupation. What they are supposed to do is also a determinant.

*Ford v. City of Richmond,* 239 Va. 664, 391 S.E.2d 270, 271 (1990).

tract with Kodiak directed Kodiak to mine the coal "according to its own manner ... [and] without direction by [Wellmore] except as may be necessary for Company to protect its property or insure conformity with its mining plans and projections." J.A. at 88. By contrast, the owner/coal company in *Smith* exerted considerable control over the operations of its subcontracted miners and haulers, and the company also maintained workers' compensation coverage for these workers. *Smith,* 351 S.E.2d at 15.

The record before the district court in the instant case provided the court less support for finding that the subcontracted fraction exception applied than did the facts before the *Smith* court. The record in the instant case does, however, indicate that Wellmore operated roughly 30 mines during the period surrounding the accident, that it faced up most of these mines, that it received coal for processing from the Kodiak mine, and that Wellmore kept approximately 20 trucks which were occasionally used to assist subcontractors when mining production exceeded a subcontractor's hauling capabilities. Even though Kodiak did not request Wellmore's assistance with hauling, the district court was not without evidentiary bases for determining that mining and hauling were an "essential and integral part of its business purpose." *Bowling v. Wellmore Coal Corp.,* No. 91–20196–A, slip op. at 5 (W.D.Va. Feb. 16, 1996). Based on our *de novo* review, we agree with this assessment.

## VI.

Because the facts in the instant case are not at issue, and because the district court applied the proper law, we follow the reasoning of *Smith v. Horn,* 232 Va. 302, 351 S.E.2d 14, 17 (1986), and find that Bowling's hauling of coal is "obviously a subcontracted fraction of a main concern." Therefore, we affirm the district court's legal conclusion that Bowling is the statutory employee of Wellmore and, accordingly, we affirm the grant of summary judgment for Wellmore.

*AFFIRMED.*