## CIRCUIT COURT OF THE CITY OF ROANOKE

Steven Ray Pendleton

v.

Harcros Lumber & Building
Supplies, Inc., t/a Moore's

December 8, 1998

Case No. CL95001174-00

BY JUDGE JONATHAN M. APGAR

This matter has come on for a ruling on the Defendant's Special Plea in Bar asserting that the Plaintiff's action for negligence is barred by the exclusive remedy of the Virginia Workers' Compensation Act. The matter has been briefed, the transcript of the September 21, 1998, hearing has been filed, and the Court is now ready to rule.

### Facts

Harcros Lumber & Building Supplies, Inc., t/a Moore's ("Moore's"), contracted with Lucas Tire Company ("Lucas Tire") to do tire repair on its delivery vehicles. The Plaintiff, an employee of Lucas Tire, was injured while repairing tires in Moore's Fleet Maintenance Center, their "in-house" mechanical repair shop. The Plaintiff has received, and continues to receive, workers' compensation through Lucas Tire. In addition, the Plaintiff has filed this common law negligence claim against Moore's. The Defendant has filed a Special Plea in Bar asking this Court to dismiss the Plaintiff's claim on the grounds that it is barred by the exclusive remedy provision of the Virginia Workers' Compensation Act ("Act"). The sole issue for the Court is whether Moore's was the Plaintiff's statutory employer under the Act and, therefore, is protected from common law claims.

Moore's is a lumber and building supply company owned by Harcros Lumber & Building Supplies, Inc. In July of 1993, the time of the Plaintiff's

injury, Moore's owned and operated sixty retail stores from Vermont to North Carolina. Moore's stored its entire stock in a central distribution center in Roanoke, Virginia. Moore's used its own vehicles to transport the merchandise from its distribution center to its various retail outlets. Within the distribution center, Moore's operated a Fleet Maintenance Center to do the repairs on its substantial fleet of delivery vehicles, consisting of twenty tractors, seventy-four trailers, two hundred fifty trucks, twenty-three automobiles, two service trucks (for repairs on the road), and two hundred seventy-four truck lifts. Moore's employed eleven people in its repair facility, including a fleet manager, a shop foreman, and six truck mechanics. The Fleet Maintenance Center operated full time throughout the work week and for half of Saturday. In addition, a mechanic was on call to come in and do needed repairs when the facility was closed. With the exceptions of beam bushing and tire repair, employees of Moore's did all of the maintenance and repairs that were necessary to keep the vehicles operating and complying with state and federal safety guidelines.

The tire work was contracted to Lucas Tire. When needed, Moore's would call Lucas Tire, and Lucas Tire would send an employee over to the Fleet Maintenance Center to work on specific tires. The Lucas Tire employee would do all of the necessary work, except for recapping, at the Moore's maintenance facility. The Lucas Tire employee would bring his own tools for the job, work independently, and then present the invoice to the Moore's shop foreman. The Moore's mechanics, though capable, lacked the time to do tire repair and, in any event, were instructed not to do so.

The Plaintiff, a Lucas Tire employee, was in the Moore's Fleet Maintenance Center working on one of Moore's tires when he stepped on an iron grate, causing serious and permanent injury. The Plaintiff has received, and continues to receive, workers' compensation through Lucas Tire, and he has filed this negligence claim against Moore's.

## Discussion

The Act (Va. Code § 65.1-1, *et seq.*) provides that workers' compensation is an employee's exclusive remedy against an employer for injuries sustained in the course of employment. The Act creates a "societal exchange" that guarantees compensation to injured employees and, in turn, prohibits common law suits against employers. *Whalen v. Dean Steel Erection Co.*, 229 Va. 164, 172 (1985). The purpose of the Act is to bring within its coverage all persons engaged in any work that is part of the trade, business, or occupation of any employer. The Act is intended, in part, to prevent owners from avoiding liability to pay workers' compensation by contracting others to perform its

trade, business, or occupation. *Wilton v. Gibson*, 22 Va. App. 606 (1996). With respect to employees of subcontractors, the Act provides:

> When any person (referred to in this section as "owner") undertakes to perform or execute any work which is part of his trade, business, or occupation and contracts with any other person (referred to in this section as "subcontractor") for the execution or performance by or under such owner, the owner shall be liable to pay to any worker employed in the work any compensation under this title he would have been liable to pay if the worker had been immediately employed by him.

Va. Code § 65.2-302(a).

An owner who contracts another to perform any part of his trade, business, or occupation constitutes an employer within the meaning of the Act and is referred to as a statutory employer. The statutory employer is liable to pay workers' compensation to the subcontractor's employees but is likewise immune from any common law action on the part of that employee. However, if the subcontractor was not engaged in the owner's trade, business, or occupation, then the owner constitutes a suable "other party" within the meaning of the Act. Va. Code § 65.2-309.

The distinction between a statutory employer and a suable other party is a complicated one and entails whether the defendant is a "stranger" to the worker's trade or business. *Feitig v. Chalkley*, 185 Va. 96 (1946); *Whalen v. Dean Steel Erection Co.*, 229 Va. 164 (1985); *Richardson v. L'Eggs Brands, Inc.*, 89 F.3d 829 (4th Cir. 1996). This determination depends on the particular facts and circumstances of each case and, therefore, "does not readily yield to categorical or absolute standards." *Bassett Furniture v. McReynolds*, 216 Va. 897 (1976). The general test has always been whether the employee's work "relates" to the owner's trade, business, or occupation. *Rasnick v. Pittson Co.*, 237 Va. 658 (1989).

In order to determine whether Moore's is the Plaintiff's statutory employer, the Court must first determine, as a factual matter, the nature of Moore's trade, business, or occupation at the time of the Plaintiffs' injury. Once this is done, the Court must decide whether to apply the optional test first articulated by the Virginia Supreme Court in *Shell Oil Co. v. Leftwich*, 212 Va. 715 (1972):

> The test is not one of whether the subcontractor's activity is useful, necessary, or even absolutely indispensable to the statutory employer's

business, since, after all, this could be said of practically any repair, construction, or transportation service. The test (except in cases where the work is obviously a subcontracted fraction of the main contract) is whether this indispensable activity is, in that business, *normally* carried on through employees rather than independent contractors.

*Id.* at 722. (Emphasis supplied.)

The *Shell* test provides a two-pronged analysis. The Court must determine if the Plaintiff's work falls within the subcontracted fraction exception to the *Shell* test. To determine if the exception applies, it is necessary to ask whether tire repair was an obviously and unquestionably subcontracted fraction of one of Moore's main business concerns. *Smith v. Horn*, 232 Va. 302, 308 (1986). If the exception does apply, then Moore's is the Plaintiff's statutory employer. However, if the exception does not apply, the Court must ask whether Moore's employees normally performed the work the Plaintiff was doing at the time of his injury. If so, then Moore's is the Plaintiff's statutory employer.

Based on the testimony of Moore's employees recorded in the hearing transcript (referred to hereafter as "Tr. __"), Moore's business consisted of selling home construction supplies. This Court chooses to utilize the *Shell* test as a guide to determine whether Moore's was the Plaintiff's statutory employer under the Act.

Moore's argues that vehicle maintenance, including tire repair, was part of its primary business functions of transporting and distributing its stock from the main distribution center to its various retail outlets. In support of its argument, Moore's cites *Smith v. Horn*, 232 Va. 302 (1986), the "seminal" case concerning the subcontracted fraction test. *Bowling v. Wellmore Coal, Inc.*, 114 F.3d 458, 461 (4th Cir. 1997). In *Smith*, Defendant Knox Creek was a coal company that hired independent contractors to mine coal from mines that Knox Creek either owned or leased and also hired another independent contractor to deliver the coal from the mines to Knox Creek's processing center. The trial court had found that Knox Creek was in the trade, business, or occupation of mining, processing, and selling coal. The Virginia Supreme Court affirmed the lower court's finding that the independent contractors, in their mining and delivery functions, were engaged in the business of Knox Creek. This Court similarly finds that transport of the home construction supplies from the main distribution center to the various retail outlets was an essential function of Moore's primary business concern of selling home construction supplies. *Smith* makes clear that had the Plaintiff in this case been injured while transporting Moore's goods from the distribution center to its retail outlets, the Plaintiff would fit squarely under the exclusive remedy

provision of the Act. As in *Smith*, he would have been performing an "essential function" of Moore's main business concern. *Bowling*, 114 F.3d at 464. However, it is not as clear that *fixing* Moore's delivery vehicles is analogous to the delivery function itself. *Smith* may provide added guidance concerning how connected the Plaintiff's work must be to the main business concern. In *Smith*, the employee of the subcontractor who was contracted to mine the coal was not actually mining but was delivering materials to the mines. The court reasoned that: (1) Knox Creek's business involved mining; and (2) the independent contractor was "performing duties within this purpose." *Smith v. Horn*, at 307 (1986). Moore's urges this Court to add a step to the *Smith* analysis by reasoning that: (1) Moore's was involved in the business of selling home construction supplies; (2) transporting the goods was an essential function of this main business purpose; and (3) vehicle maintenance, including tire repair, was an essential element of the main business purpose. This Court is not willing to extend the subcontracted fraction exception to include the maintenance of equipment or vehicles that are used as part of the essential function of a main concern. The subcontract fraction exception was never intended to create an endless chain of exceptions stemming from a single identifiable main business concern.

Finally, in order to decide whether the Plaintiff engaged in the trade, business, or occupation of Moore's, the Court must decide whether Moore's satisfies the normal work prong of the *Shell* test. Moore's does not contend that tire work is an activity that was normally carried on by its employees. (Tr., pp. 6, 50.) Nor would the case law support a contention that tire work was part of Moore's trade, business, or occupation. *Johnson v. Jefferson National Bank*, 244 Va. 482 (1992), is particularly instructive on this point. In *Jefferson*, the plaintiff was a subcontractor who was injured while painting the upper portions of the defendant bank's building. The bank had its own maintenance staff that performed numerous activities, including interior and exterior painting. The Virginia Supreme Court held the plaintiff's painting was not part of the bank's trade, business, or occupation. The court noted that the maintenance staff had never painted at the heights involved and that the plaintiff was "performing a specialized activity normally carried out through independent contractors." *Id.* at 485. Likewise, Moore's employees never performed tire repair and always hired independent contractors for this purpose. (Tr., pp. 50, 54.) While Moore's employees did do some tire rotation and tire balancing, they never did actual tire repair. This case is also distinguishable from *Stewart v. Bass Constr. Co.*, 223 Va. 363 (1982), in which the court found that a specific maintenance task was part of the defendant's trade, business, or occupation. In *Stewart*, a paper manufacturer,

Federal Paper Board Company ("Federal"), rented a crane and a crane operator to assist its employees in the removal of a broken aerator from a lagoon. The Court noted that the removal of broken aerators was a task that was normally performed by the Federal employees and that Federal often rented a crane and crane operator to assist in the task. In addition, Federal employees worked alongside the crane operator while a Federal employee supervised and directed the task. *Id.* at 365, 490. In contrast, Moore's employees did not assist the Plaintiff in tire repair, and Moore's did not supervise or direct the Plaintiff's work. In fact, the Moore's shop foreman usually did not see the Plaintiff until the task was completed. (Tr., p. 56.)

## *Holding*

For the foregoing reasons, the Court finds that the Plaintiff was not engaged in Moore's trade, business, or occupation when he sustained his injury. Moore's does not constitute the Plaintiff's statutory employer. Therefore, the Plaintiff's action is not barred by the Virginia Workers' Compensation Act, and the Defendant's Plea in Bar is denied.