# David Johnson, et al.

## v.

# Jefferson National Bank

Record No. 920099

November 6, 1992

Present: Carrico, C.J., Compton, Stephenson, Lacy, Hassell and Keenan, JJ., and Poff, Senior Justice

*James P. Jones; Gerald L. Gray (Penn, Stuart, Eskridge & Jones*, on briefs), for appellants.

*E. Stanley Murphy (Bruce M. Steen; McGuire, Woods, Battle & Boothe*, on brief), for appellee.

JUSTICE STEPHENSON delivered the opinion of the Court.

The dispositive issue in this appeal is whether the plaintiffs' actions are barred by the exclusive remedy provision of the Virginia Workers' Compensation Act (the Act). Former Code § 65.1-40 (now Code § 65.2-307).

The two actions arose from an accident that occurred on March 24, 1988, in the City of Charlottesville, which resulted in the death of Billy Ray Viers and in personal injuries to David Johnson. When the accident occurred, Johnson and Viers, employees of Berry Brothers Painting and Decorating (Berry), were painting the exterior trim on an office building owned and occupied by Jefferson National Bank (the Bank).

The Bank filed pleas in bar to each action, asserting that Johnson and Viers were its "statutory employee[s]," and, therefore, the actions were barred by the Act. Former Code §§ 65.1-29 through 65.1-31 (now Code § 65.2-302). Following an evidentiary hearing, the trial court sustained the Bank's pleas, dismissed the plaintiffs' motions for judgment, and entered final judgments in favor of the Bank. These consolidated appeals ensued.

The facts are derived from allegations in the plaintiffs' motions for judgment and from the testimony of Albert Roy Booth, the Bank's facilities manager. The Bank and Berry entered into a written contract whereby Berry agreed to paint the exterior metal trim of the Bank's data center building. Immediately prior to the accident, Johnson and Viers were painting from a metal scaffold suspended

from a ledge above. The scaffold was approximately 56 feet from the ground. A utility pole was located within 48 inches of the building's wall, and the top of the pole was approximately 19 feet beneath the scaffold. High-voltage electrical transmission lines were connected to the pole.

On the date of the accident, the Bank knew that Berry employees would be painting its building from a scaffold above the utility pole. Prior to that date, Berry had requested the Bank to arrange to have the high-voltage lines "de-energized or protectively insulated and/or isolated" at the time the painting would occur, and the Bank agreed to make the arrangements.

The Bank, however, failed to make the arrangements. Consequently, while Johnson and Viers were working, wire ropes supporting the scaffold came into contact with the high-voltage lines and became energized. Electricity passed through the wire ropes to the building's metal trim above the scaffold and "shorted out" where the ropes met the trim. As a result, the wire ropes burned and broke, causing the scaffold and Johnson and Viers to fall 56 feet to the pavement below.

On the date of the accident, the Bank employed a maintenance staff of 10 persons in addition to the facilities manager. The staff consisted of two carpenters, two electricians, three security people, a yardman, and two "general all-purpose" employees. The staff was responsible for the maintenance of approximately 85 buildings. Members of the staff had painted the interior and exterior of two to five of the buildings annually.

At times, the Bank also engages independent contractors to paint its facilities "because [the Bank] do[es] not have adequate staff to do these different projects on a timely basis." Indeed, the Bank contracted with Berry to paint the data center building "because [the Bank] didn't have adequate staff to do it."

The Bank does not own any scaffolding, and "[i]t's a rare occasion that [it has] to have a scaffolding on [its] structures." On those rare occasions, scaffolding is used because "obstructions" or "configurations and what not" prevent the use of ladders. The Bank's maintenance staff, however, had not used scaffolding for painting in high places, such as where Johnson and Viers were working when the accident occurred. Additionally, the Bank purchased the data center facility in the mid to late 1970s, and since that time, its maintenance staff has not painted the building, except for a "portion of the trim on the deck."

 Whether these plaintiffs can maintain a common law negligence action against the Bank depends upon whether the work performed by Berry, the independent contractor, was part of the Bank's "trade, business or occupation." Former Code § 65.1-29 (now Code § 65.2-302(A)). *See, e.g., Rasnick* v. *The Pittston Company, Inc.*, 237 Va. 658, 379 S.E.2d 353 (1989); *Stewart* v. *Bass Constr. Co.*, 223 Va. 363, 288 S.E.2d 489 (1982); *Bassett Furniture* v. *McReynolds*, 216 Va. 897, 224 S.E.2d 323 (1976); *Shell Oil Co.* v. *Leftwich*, 212 Va. 715, 187 S.E.2d 162 (1972); *Feitig* v. *Chalkley*, 185 Va. 96, 38 S.E.2d 73 (1946). Resolution of the issue depends upon the facts and circumstances of the particular case. *Bassett Furniture*, 216 Va. at 902, 224 S.E.2d at 326. Consequently, the issue "does not readily yield to categorical or absolute standards." *Id.* In *Shell Oil Co.*, we said that the test to be applied in resolving the issue " 'is not one of whether the subcontractor's activity is useful, necessary, or even absolutely indispensable to the statutory employer's business . . . [but] is whether this indispensable activity is, in that business, *normally* carried on through employees rather than independent contractors.' " 212 Va. at 722, 187 S.E.2d at 167.

The Bank contends that the painting performed by Johnson and Viers was work "normally performed by the Bank's employees rather than independent contractors," and, therefore, Johnson and Viers were engaged in an activity that was part of the Bank's trade, business, and occupation. In support of its contention, the Bank relies heavily upon *Stewart*.

The plaintiffs contend, on the other hand, that although the Bank employed maintenance personnel who performed painting work, Johnson and Viers were performing a specialized activity normally carried out through independent contractors. Thus, the plaintiffs assert, the activity was not part of the Bank's trade, business, or occupation. They find support for their contention in *Bassett*.[1]

In *Stewart*, a mechanic employed by a company that manufactured paper products was injured while attempting to remove from a

---

[1] As an alternative contention, the plaintiffs cite to *Henderson* v. *Central Telephone Co.*, 233 Va. 377, 355 S.E.2d 596 (1987), and to *Ford* v. *City of Richmond*, 239 Va. 664, 391 S.E.2d 270 (1990), apparently invoking the statutory-employer rule applied in those cases to a public entity. The test for determining whether an employee is engaged in the trade, occupation, or business of a public entity requires an examination of the nature of the business mandated or authorized by legislative authority as well as the business in which the entity actively is engaged. *Henderson*, 233 Va. at 383, 355 S.E.2d at 599-600. That test is inapplicable here because the Bank is not a public entity.

lagoon an aerator in need of repairs. 223 Va. at 364-65, 288 S.E.2d at 489-90. The manufacturer used the aerator in its manufacturing process. *Id.* at 364, 288 S.E.2d at 489. The mechanic and two other employees of the manufacturer participated in the removal. *Id.* at 365, 288 S.E.2d at 490. The manufacturer rented a crane and a crane operator from a construction company to assist the manufacturer's employees in the endeavor, and the mechanic supervised the project. *Id.* After the manufacturer's employees attached the crane's hook to the aerator, the mechanic signalled the crane operator to raise the crane's boom. *Id.* The mechanic was injured when the boom became entangled in some overhead electrical lines. *Id.*

Although the mechanic was paid workers' compensation benefits by the manufacturer, he brought a negligence action against the construction company to recover damages for his injuries, contending that the construction company was an "other party" within the meaning of the Act.[2] *Id.* at 364-65, 288 S.E.2d at 489-90. We affirmed the trial court's dismissal of the negligence action, concluding that the construction company was engaged in the business of the manufacturer and, therefore, was not an "other party." *Id.* at 367, 288 S.E.2d at 491. We noted that the mechanic "was carrying out a normal maintenance activity of his employer," the manufacturer regularly engaged a crane and operator to assist in removing aerators, the manufacturer's employees worked at the scene, and the mechanic supervised the work. *Id.* at 366-67, 288 S.E.2d at 491.

In *Bassett*, a large furniture manufacturer engaged an independent contractor to install a conveyor system in the manufacturer's plant. 216 Va. at 899, 224 S.E.2d at 325. The agreed price for the work was $173,722. *Id.* McReynolds, the contractor's employee, was injured when he fell through a hole in a floor which had been cut to accommodate the conveyor system. *Id.* at 900, 224 S.E.2d at 325. The manufacturer's carpenters had cut the hole because that particular task was not the contractor's responsibility. *Id.*

The manufacturer had a relatively small work force that performed maintenance and minor construction. *Id.* Construction projects involving more than $25,000, however, were performed by independent contractors. *Id.*

---

[2] Former Code § 65.1-41 (now Code § 65.2-309) provided that an employee could maintain an action at law against the person causing his injury, provided such person was an "other party."

We concluded in *Bassett* that the manufacturer was not McReynolds' statutory employer, and, therefore, the Act did not bar his negligence action. *Id.* at 904, 224 S.E.2d at 327. The following facts and circumstances supported our conclusion:

> Bassett was a manufacturer of furniture. It maintained no separate construction division. Only a negligible fraction of its 7000 employees was trained in construction skills. Carpenters and similar craftsmen were assigned to maintenance crews. Depending upon their ''availability'' and ''what other jobs they were doing'', they were sometimes used to construct all or part of minor projects and sometimes ''to make modifications to tie in with'' major projects.

*Id.* at 903, 224 S.E.2d at 327. We also noted that, although the manufacturer had the capacity to build new conveyors, it never had undertaken a project of that magnitude. *Id.* at 904, 224 S.E.2d at 327.

We think *Bassett* controls. In the present case, the Bank maintained a small maintenance staff but its principal business was banking. The maintenance staff regularly paints the interior and exterior of the Bank's facilities, but the Bank frequently engages independent contractors because it does not have an adequate staff to do the various projects on a timely basis. More significantly, the Bank's employees never had painted at the height and under the conditions which Johnson and Viers were working.

We conclude, therefore, that while the Bank's maintenance staff may have had the capacity to do the work that Berry was doing when the accident occurred, such work was not *normally* performed by the Bank. Consequently, we hold that Johnson and Viers were not the Bank's statutory employees because Berry was not engaged in an activity that was part of the Bank's trade, business, or occupation. *See Salih* v. *Lane*, 244 Va. 436, 423 S.E.2d 192 (1992) (this day decided).

Accordingly, we will reverse the trial court's judgment and remand the case for further proceedings.

*Reversed and remanded.*