# CIRCUIT COURT OF THE CITY OF RICHMOND

Lisa C. Peck,
Administratrix

v.

Safway Steel
Products, Inc., et al.

June 15, 2000

Case No. LF-2314-4

BY JUDGE RANDALL G. JOHNSON

This wrongful death case is before the court on a plea in bar of workers' compensation. An evidentiary hearing was held on May 30, 2000.

In November 1997, White Construction Company, Inc., was the general contractor on a project to repair and replace deteriorated exterior brick and limestone panels on Sanger Hall, a building located on the campus of the Medical College of Virginia in Richmond. The project involved the use of scaffolding to allow White's employees to reach portions of the building that could not be reached from the ground. Safway Steel Products, Inc., provided the scaffolding under a contract with White.

On November 25, 1997, plaintiff's decedent, William R. Peck, Jr., who was a construction superintendent for White, fell from the scaffolding to his death. The motion for judgment alleges that the scaffolding was defective and unsafe. Originally named as defendants were Safway, which according to the motion for judgment "negligently designed, manufactured, marketed, distributed, delivered, leased, and inspected" the scaffolding; HEK Platforms & Hoists, Inc., which according to the motion for judgment "negligently designed, manufactured, marketed, distributed, delivered, sold, tested, and inspected" the scaffolding; and Dunbar, Milby, Williams, Pittman & Vaughan, P.C., which was the engineer on the project. Safway filed a third-party motion for judgment against four other entities, but none of those other entities have

been served. Dunbar has now been nonsuited, leaving Safway and HEK as the only defendants. It is Safway's plea that is presently before the court.

The relevant considerations in cases such as this have been set forth many times by our Supreme Court,[3] and no detailed discussion of those considerations will be set out here. Generally, the test is whether a person or other entity performing work or services for a general contractor was, at the time of the injury or death at issue, an "other party"; that is, whether the person or other entity was engaged in an activity that was *not* part of the trade, business, or occupation of the general contractor. If the person or other entity was an "other party," also referred to in the cases as a "stranger" to the trade, business, or occupation of the general contractor, an injured party can maintain a common law action to recover for his or her injuries. Otherwise, the exclusive remedy is under the Virginia Workers' Compensation Act, Va. Code §§ 65.2-100 *et seq*. Each case, of course, must be decided on its own particular facts. *Bassett Furniture v. McReynolds*, 216 Va. 897, 902, 224 S.E.2d 323, 326 (1976). Based on the facts of this case, a common law action cannot be maintained against Safway.

As already noted, the project on which plaintiff's decedent was killed required White, the general contractor, to repair and replace deteriorated brick and limestone panels at Sanger Hall. That could not be done without the use of some device(s), *e.g.*, ladders, cranes, scaffolding, to allow White's employees to reach all sections of the building that needed repair. White chose to use scaffolding. It contracted with Safway to provide the scaffolding. In fact, not only did the contract require Safway to deliver the scaffolding to the job site, it also required Safway to assemble, disassemble, and reassemble the scaffolding at the job site each time White's employees needed to move to a different section of the building. The contract called for such assembly, disassembly, and reassembly to occur at least twelve times. The court holds that such activity by Safway prevents it from being an "other party" within the meaning of the relevant cases.

---

[3] *See, e.g., Johnson v. Jefferson National Bank*, 244 Va. 482, 422 S.E.2d 778 (1992); *Rasnick v. Pittston Co.*, 237 Va. 658, 379 S.E.2d 353 (1989); *Carmody v. F. W. Woolworth Co.*, 234 Va. 198, 361 S.E.2d 128 (1987); *Smith v. Horn*, 232 Va. 302, 351 S.E.2d 14 (1986); *Conlin v. Turner's Express, Inc.*, 229 Va. 557, 331 S.E.2d 453 (1985); *Whalen v. Dean Steel Co.*, 229 Va. 164, 327 S.E.2d 102 (1985); *Stewart v. Bass Const. Co.*, 223 Va. 363, 288 S.E.2d 489 (1982); *Stout v. Onorati*, 221 Va. 143, 267 S.E.2d 154 (1980); *Bosher v. Jamerson*, 207 Va. 539, 151 S.E.2d 375 (1966); *Rea, Administratrix v. Ford*, 198 Va. 712, 96 S.E.2d 92 (1957); *Sykes v. Stone & Webster Eng'g Corp.*, 186 Va. 116, 41 S.E.2d 469 (1947).

124

In its opposition to Safway's plea, plaintiff cites several cases holding that deliverymen and materialmen were not engaged in the trade, business, or occupation of general contractors. It is plaintiff's argument that Safway also was a deliveryman or materialman, that is, that its sole function was to provide necessary materials (scaffolding) to the job site, and that it was not engaged in the trade, business, or occupation of White. The court rejects plaintiff's argument.

In *Burroughs v. Walmont*, 210 Va. 98, 168 S.E.2d 107 (1969), Burroughs was an employee of a trucking company that delivered sheetrock to a construction site. While carrying sheetrock into the homes under construction, Burroughs fell down an open stairwell in one of the homes and was injured. He sued Lindsey & Waldron, the general contractor. The trial court dismissed the case on a plea of workers' compensation. The Supreme Court reversed. In doing so, the Supreme Court discussed *Bosher v. Jamerson*, 207 Va. 539, 151 S.E.2d 375 (1966), which held that a truck driver delivering sand to a job site for use in a cement floor, and who helped to spread the sand in the foundation area in accordance with the building specifications, was engaged in the trade, business, and occupation of the general contractor, thereby precluding an action by an employee of the general contractor against the driver's employer for injuries allegedly sustained as a result of the driver's negligence. The Court said:

> There is a significant difference between *Bosher* and this case. The deliveryman in *Bosher* delivered the sand, *and* he participated in laying the six-inch sand base required by the building specifications. The deliveryman in this case delivered the sheetrock to the rooms where it would be used by the workmen, but he did not participate in the construction of the buildings.
>
> The gathering of material is of course essential to the construction of a building. So in a sense each supplier of material is engaged in the general contractor's trade, business, or occupation. But a line must be drawn to determine who is an "other party" for the purposes of the Workmen's Compensation Act. And persons who function solely as suppliers and deliverers of goods have been held "other parties". . . .
>
> In this case the stacking of sheetrock in the several rooms constituted the final act of delivery, not an act of construction. So Burroughs's activities did not transcend delivery, and he was not engaged in the trade, business, or occupation of Lindsey & Waldron. Lindsey & Waldron was therefore an "other party," and Burroughs could maintain this tort action.

210 Va. at 99-100 (emphasis in original, citations omitted).

Similarly, in *Hipp v. Sadler Materials Corp.*, 211 Va. 710, 180 S.E.2d 501 (1971), the Supreme Court reversed a trial court's grant of summary judgment against an employee of a general contractor who was injured by the driver of a cement truck at a job site. The driver was employed by Sadler Materials Corp., which had agreed to furnish and pour concrete at the construction site. Distinguishing the case from *Bosher, supra*, the Court said:

> The trial court relied upon *Bosher v. Jamerson*, 207 Va. 539, 151 S.E.2d 375 (1966), wherein we held that the spreading of sand in accordance with plans and specifications, which called for a six-inch sand base beneath the floor of a building under construction, constituted part of the trade, occupation, and business of the general contractor . . . .
>
> In this case, Sadler was required only to deliver concrete where directed, not to spread or finish the concrete. In performing Sadler's obligation, Sadler's employee was performing in our opinion the final act of delivery, not an act of construction constituting the trade, business, or occupation of the general contractor. We, therefore, hold that the Workmen's Compensation Act does not bar this action.

211 Va. at 711.

In *Yancey v. JTE Constructors, Inc.*, 252 Va. 42, 471 S.E.2d 473 (1996), Reinforced Earth Company ("RECO") had contracted with a general contractor to design, manufacture, and deliver sound barrier wall panels to a job site on Interstate Highway 66. The contract required RECO to "provide on site patching at its cost for materials delivered damaged to the job site." At the job site, the general contractor's crane unloaded a panel from RECO's delivery truck and placed it on a trailer for inspection and patching, rather than moving each panel directly from the delivery truck to placement in the sound barrier wall. Following the inspection, the crane again lifted the panel and moved it to its place in the wall. This procedure allowed the crane to place an inspected panel into the wall while another panel was being inspected. John Yancey, a RECO employee, was injured when one of the three-ton panels fell while he was inspecting it. He sued the general contractor, but his suit was dismissed by the trial court. The Supreme Court reversed:

> The panels manufactured and delivered by RECO were not the sound wall, but were component parts of the wall, much like nails, boards, and sheetrock are component parts of a house. RECO agreed to repair

126

sound panels damaged during transit. Yancey's inspection and patching activities were the final acts of delivery required by the contract. Yancey's actions did not extend to incorporating the panels into the sound wall. Therefore, Yancey was not involved in furnishing, designing, or installing a sound wall.

252 Va. at 45.

It is plaintiff's position that just as the deliverymen in the cases cited above were deemed by the Supreme Court not to be engaged in the trades, businesses, or occupations of the general contractors to whom they were making their deliveries, Safway must be deemed to have been a deliveryman of scaffolding and not engaged in the trade, business, or occupation of White. Unlike the deliverymen in the cases cited above, however, Safway did much more than simply deliver the scaffolding to the job site. By assembling, disassembling, and reassembling the scaffolding whenever White's employees needed to move to a different section of the building, Safway had an integral and ongoing role in the construction project itself.

Perhaps the distinction between Safway's role in the project at issue in this case and the general role of a deliveryman is best illustrated in another case involving Safway. In *Bristow v. Safway*, 327 F.2d 608 (4th Cir. 1964), Safway contracted with Robert M. Dunville and Bros. to provide scaffolding for a project that Dunville was performing under a contract with Richmond Food Stores. As the court was careful to point out, Safway's contract only required Safway to provide scaffolding. Safway had no other obligation:

> The formal lease agreement between Safway and Dunville did not require Safway to do anything more than deliver the unassembled scaffolding to Dunville at the construction site. Accordingly, the equipment was placed at the Richmond Food plant by Safway, but no employee of Safway remained there or had anything to do with the erection of the scaffold. It was put up by Dunville employees exclusively.

327 F.2d at 609.

While working on the scaffolding, John Bristow, an employee of Dunville, was injured when the scaffolding turned over. The court held that he was not barred from suing Safway:

> Our judgment . . . is that Safway was an "other party" not engaged in "the execution or performance" of, and not "employed in," the work

embraced within the contract between Richmond Food and Dunville. Safway simply gave Dunville permission to use its scaffolding, which remained the property of Safway. This did not convert Safway into a participant in the work. It was the equivalent of renting or selling a tool, such as a hammer, for use by Dunville in its work.

327 F.2d at 610.

Unlike its obligation in *Bristow*, Safway's obligation in the case at bar required more than simply "renting or selling a tool." Indeed, to use the Fourth Circuit's "hammer" analogy, Safway's obligation here was not simply to deliver a hammer to a job site. In this case, Safway was required to return to the job site each time a nail was driven and move the hammer to the site of the next nail. This, in this court's view, made Safway a participant in the work being performed. It was not an "other party."

Finally, the court notes plaintiff's argument that the agreement between White and Safway was not a subcontract. That fact, however, even if true, makes no difference. As was said in *Rasnick v. Pittston Co.*, 237 Va. 658, 662, 379 S.E.2d 353 (1989):

Under Virginia law, the test continues to be whether the act complained of relates to the business of the employer [or general contractor]. The existence of a contract is not required.

237 Va. at 662.

Thus, whether Safway's agreement with White was a subcontract or an independent contract, something the court does not decide, is not dispositive. Whatever Safway's status, it was engaged in White's trade, business, and occupation of replacing and repairing brick and limestone panels at Sanger Hall. Plaintiff's suit against Safway is barred.