Chad Franklin GOBBLE and Patricia Jane Duggan Gobble, Co–Administrators of the Estate of Gene Franklin Gobble, Plaintiffs,

v.

INTERNATIONAL PAPER COMPANY, Defendant.

No. 1:00CV00527.

United States District Court, M.D. North Carolina.

May 22, 2002.

Jeffrey Dean Patton, Blanco Tackabery Combs & Matamoros, P.A., Winston–Salem, NC, Randolph M. James, Randolph M. James, P.C., Winston–Salem, NC, Peter Joseph Juran, Blanco Tackabery Combs & Matamoros, P.A., Winston–Salem, NC, for Chad Franklin Gobble, Patricia Jane Duggan Gobble.

Stephen R. Calkins, Kilpatrick Stockton, L.L.P., Charlotte, NC, Daniel J. Hoppe, Jr., Rosewell Page, III, McGuire Woods, LLP, Richmond, VA, James Carlos Smith, Kurt E. Lindquist, II, Robert Ashley Muckenfuss, McGuire Woods, LLP, Charlotte, NC, David H. Worrell, Jr., McGuire Woods, LLP, Richmond, VA, for International Paper Co.

## MEMORANDUM OPINION

BEATY, District Judge.

This case comes before the Court on Plaintiff Chad Franklin Gobble and Plaintiff Patricia Jane Duggan Gobble's (together, "Plaintiffs") Motion for Partial Summary Judgment [Document # 34]. In greater detail, Plaintiffs request summary judgment as to Defendant International Paper Company's ("Defendant" or "International Paper") fourth affirmative defense, which asserts that Plaintiffs' claims are barred by the Virginia Workers' Compensation Act, Va.Code Ann. § 65.2–307(A). For the following reasons, Plaintiffs' Motion for Partial Summary Judgment is GRANTED.

## I. FACTUAL BACKGROUND

Plaintiffs Chad Franklin Gobble and Patricia Jane Duggan Gobble are co-administrators of the estate of the late Gene Franklin Gobble ("Gene Gobble"). International Paper is a New York corporation that produces paper, packaging, and forest products. Defendant operates a manufacturing facility in Stuart, Virginia ("the Stuart plant") that produces a product known as particle board.[1] As part of the production process for this product, the Stuart plant utilized two large silos to hold sander dust, a flammable by-product of the particle board manufacturing process. The sander dust stored in these silos ("fuel silos") was then used to fuel a boiler, located adjacent to the two fuel silos.

On or about November 1, 1999, a fire started within one of the two fuel silos. Shortly after the fire, employees at the Stuart Plant noticed that the fuel silo that had caught fire had started to collapse. In light of the dangerous situation posed by the collapsing fuel silo, the Stuart plant decided to demolish both of the fuel silos. Although the Stuart plant had a mechanical maintenance crew of between twenty-three to twenty-four people, the management at the Stuart plant decided to utilize

---

1. Particle board is made by pressing wood particles together using various chemicals and compounds. The completed boards are then sanded down or otherwise smoothed. (Compl.¶ 5.)

a contractor to provide the large crane and personnel needed for the demolition. According to the Stuart Plant's facility manager, Thomas B. Garrahan ("Garrahan"), and the Stuart Plant's general foreman, David Gwaltney ("Gwaltney"), International Paper decided to contract out the demolition of the fuel silos because the maintenance crew at the Stuart plant did not have the proper equipment or expertise for the demolition.[2] (Gwaltney Dep. at 30–32; Garrahan Dep. at 57.) Although the maintenance crew had in the past demolished at least one small silo, Gwaltney and Garrahan confirmed that the maintenance crew could not have been utilized to demolish the fuel silos, due to each fuel silo's large size and the danger that the fuel silos might collapse due to their weakened condition after the fire. (Gwaltney Dep. at 33–35; Garrahan Dep. at 57, 59.) Accordingly, shortly after the management made the decision to demolish the fuel silos, International Paper contracted with Guy M. Turner, Inc. ("Turner"), a company headquartered in Greensboro, North Carolina, to provide the necessary workers and cranes needed to demolish the fuel silos.

On November 5, 1999, Turner dispatched a team of approximately ten workers from Greensboro, North Carolina, including Gene Gobble and William L. Walls ("Walls"), and at least one large construction crane to demolish both fuel silos. Two days later, on November 7, 1999, Turner employees attempted to remove the top of the collapsing fuel silo. As part of this effort, Walls and Gene Gobble stood in the elevated basket of the crane, close to the top of the collapsing fuel silo, in order to saw an opening into the fuel silo wall. The opening created by Walls and Gene Gobble released a mist of sander dust and other chemicals from the fuel silo. As the mist contacted the open flames from the adjacent boiler, an explosion occurred. Walls and Gene Gobble were severely burned by the explosion, and both men died as a result of the injuries they incurred. Plaintiffs assert that International Paper knew of the risk that an explosion could occur but failed to take adequate precautions to protect the Turner employees.

On April 28, 2000, Plaintiffs as co-administrators of Gene Gobble's estate filed suit against International Paper in the Superior Court of Guilford County, North Carolina. In their Complaint, Plaintiffs assert counts of negligence and wrongful death against Defendant and also request punitive damages. Defendant removed the lawsuit to the Middle District of North Carolina based on the parties' diversity of citizenship, pursuant to 28 U.S.C. § 1332(a)(1). On June 22, 2000, Defendant filed its Answer and asserted as one of its affirmative defenses that Plaintiffs' claims are barred by the Virginia Workers' Compensation Act, Va.Code Ann. § 65.2–307(A). It is this affirmative defense that Plaintiffs now challenge in their Motion for Partial Summary Judgment currently before the Court.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson*

---

**2.** The Stuart plant did own a small Drott carry-deck crane, but, according to Garrahan, the Drott crane was inappropriate for heavy construction work, such as the destruction of the fuel silos. (Garrahan Dep. at 22–23.)

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986). Under this standard, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* As a result, the Court will only grant a motion for summary judgment for a moving party when "the entire record shows a right to judgment with such clarity as to leave no room for controversy" and the record clearly demonstrates that the nonmoving party " 'cannot prevail under any circumstances.' " *Campbell v. Hewitt, Coleman & Assocs., Inc.*, 21 F.3d 52, 55 (4th Cir.1994) (quoting *Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co.*, 381 F.2d 245, 249 (4th Cir.1967)).

When ruling on a summary judgment motion, the Court views the evidence in the light most favorable to the non-moving party, according that party the "benefit of all reasonable inferences." *Bailey v. Blue Cross & Blue Shield of Va.*, 67 F.3d 53, 56 (4th Cir.1995), *cert. denied*, 516 U.S. 1159, 116 S.Ct. 1043, 134 L.Ed.2d 190 (1996). Nevertheless, the non-moving party cannot rely solely on unsupported assertions to demonstrate that a genuine issue of material fact exists. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 212. Judges are not " 'required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party.' " *Id.* at 251, 106 S.Ct. at 2511, 91 L.Ed.2d at 213 (quoting *Schuylkill & Dauphin Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448, 20 L.Ed. 867, 872 (1871)).

**B. Defendant's Affirmative Defense Pursuant to the Virginia Workers' Compensation Act**

The affirmative defense that Plaintiffs now challenge in their Motion for Partial Summary Judgment is Defendant's assertion that the Virginia Workers' Compensation Act ("the Act") bars this suit. More specifically, International Paper asserts as an affirmative defense that it is a statutory employer of Gene Gobble as defined by the Virginia Workers' Compensation Act, notwithstanding the fact that Gene Gobble was a contractual employee of Turner. International Paper further asserts that, because it is Gene Gobble's statutory employer, the Act's exclusivity provision limits Plaintiffs' remedies against International Paper to those provided by the Act and thus precludes this lawsuit. In contrast, Plaintiffs disagree with International Paper's categorization of itself as Gene Gobble's statutory employer and assert that the Virginia Workers' Compensation Act does not bar the instant suit. In order to determine how the Virginia Workers' Compensation Act impacts this case, it is necessary to first review the structure of the Act itself.

The Virginia Workers' Compensation Act governs the remedies that an injured employee may recover from an employer and provides the exclusive remedy for an employee or his personal representatives against his employer. Va.Gen.Stat. § 65.2–307(A). However, the Act does allow an employee injured in a work-related incident to bring suit against an individual who is not the employee's employer. *Stewart v. Bass Constr. Co., Inc.*, 223 Va. 363, 365, 288 S.E.2d 489, 490 (1982).

■ Accordingly, in order for the Court to determine if the Virginia Workers' Compensation Act serves as a bar to Plaintiffs' suit, it is necessary to first decide whether International Paper is, according to the Act, Gene Gobble's employer. When, as here, the employee bringing suit is an employee of an independent contrac-

tor of the defendant company, determining whether the company is the statutory employer of the plaintiff employee hinges on whether the company is a "stranger to the trade, occupation, or business in which the plaintiff was involved." *Stewart,* 223 Va. at 365, 288 S.E.2d at 490; *Feitig v. Chalkley,* 185 Va. 96, 100–103, 38 S.E.2d 73, 74–76 (1946). A company that is "a stranger to the business" of the company's independent contractor is not the statutory employer of its contractor's employees and thus the Act's exclusivity provision does not bar a lawsuit for work-related injuries brought by the independent contractor's employees. *Bassett Furniture Indus., Inc. v. McReynolds,* 216 Va. 897, 901–01, 224 S.E.2d 323, 326 (1976).

▮ Plaintiffs and Defendant disagree as to what standard should be used to determine whether International Paper is a "stranger" to its contractor Turner's business of large crane operations. Plaintiffs argue that to make this determination, the Virginia courts follow the standard established in *Shell Oil Co. v. Leftwich,* 212 Va. 715, 187 S.E.2d 162 (1972), which states that a company is the statutory employer of its contractor's employees only when the contracted activity is, "in [the company's line of] business, normally carried on through employees rather than independent contractors." *Shell Oil Co.,* 212 Va. at 722, 187 S.E.2d at 167.

In contrast, Defendant argues that the *Shell Oil Co.* test is inappropriate given the facts of the instant case. While not disputing that the *Shell Oil Co.* test is valid law, Defendant underscores the fact that it was required by federal regulation to remove the fuel silos and asserts that the *Shell Oil Co.* test is inapplicable when a company's actions are compelled by state or federal regulation. When a company's actions are compelled by federal regula-

tion, Defendant maintains that a different Virginia case, *Henderson v. Central Tel. Co. of Virginia,* 233 Va. 377, 355 S.E.2d 596 (1987), governs. In *Henderson,* the Virginia Supreme Court ruled that the defendant, a public telephone company, was a statutory employer of its contractors whenever the defendant engaged in the "duties, obligations, and responsibilities imposed upon it by statute, regulation, or other means," regardless of whether the phone company routinely performed the required duties through its own employees. *Henderson,* 233 Va. at 383, 355 S.E.2d at 600. Building upon *Henderson,* Defendant maintains that, because it was required to remove the two fuel silos pursuant to federal regulation, International Paper was obligated by law to take this action and thus should be classified as a statutory employer of Gene Gobble.

In order for Defendant to utilize the *Henderson* test, it must prove that the Virginia Supreme Court intended for the *Henderson* test to apply to private corporations like International Paper. As mentioned above, in *Henderson,* the employer-defendant was a public utility. In reaching its holding, the *Henderson* court repeatedly emphasized that the public nature of the *Henderson* defendant was a critical factor in its decision to utilize a different standard than the *Shell Oil Co.* test:

> The *Shell Oil Co.* test has never been applied by this Court in a case involving either a public utility or a governmental entity. This is so for good reason. The test is merely an approach that is useful in determining an entity's trade, business, or occupation. It is not designed for every situation. [The *Shell Oil Co.* test] works best *in cases involving private businesses* because those entities often define their trade, business, or occupation by their conduct. With regard to such entities, what they do on a day

to day basis provides a reasonably reliable indicator of their trade, business or occupation ... *[P]ublic utilities and governmental entities* are of another class.

*Id.* at 383, 355 S.E.2d at 599 (emphasis added). Further underscoring that the new standard it established was limited in application to public utilities and governmental entities, the *Henderson* court reached its decision by relying on cases involving local governmental entities. *Id.* at 383–385, 355 S.E.2d at 600–601 (citing *Anderson v. Thorington Construction Co.*, 201 Va. 266, 110 S.E.2d 396 (1959) (in which it was necessary to determine whether the parties were engaged in the trade, business, or occupation of the Richmond–Petersburg Turnpike Authority)); *Williams v. E.T. Gresham Co.*, 201 Va. 457, 111 S.E.2d 498 (1959) (in which it was necessary to determine whether the employee and contractor were engaged in the business, trade, or occupation of the Chesapeake Bay Ferry District).

To the extent that Defendant now tries to extend *Henderson* to include private entities, the Court notes that a 1992 Virginia Supreme Court case forecloses such an interpretation. In *Johnson v. Jefferson Nat'l Bank*, 244 Va. 482, 422 S.E.2d 778 (1992), the Virginia Supreme Court stated that, when determining whether the defendant bank was a statutory employer, the *Henderson* "test is inapplicable here be-

cause the Bank is not a public entity." *Johnson*, 244 Va. at 485 n. 1, 422 S.E.2d at 780; *see also Bowling v. Wellmore Coal Corp.*, 114 F.3d 458, 463 (4th Cir.1997) ("The footnote in *Johnson* ... simply indicates the court's decision not to apply to private owners the rules used to decide whether a public owner is a statutory employer."). As Defendant, like the bank in *Johnson*, is not a public entity, the Court concludes that the *Henderson* test is not the appropriate method to determine whether, under the Virginia Workers' Compensation Act, Defendant is classified as Gene Gobble's statutory employer.[3] Instead, the Court shall use the *Shell Oil Co.* test to determine whether International Paper was a statutory employer of Gene Gobble.

Under *Shell Oil*, International Paper is a statutory employer of Plaintiffs' decedent if the work done by Gene Gobble was, in International Paper's business, customarily done through its employees instead of independent contractors. This determination depends "upon the facts and circumstances in each case, and for that reason the question does not readily yield to categorical or absolute standards." *Bassett Furniture Indus., Inc.*, 216 Va. at 902, 224 S.E.2d at 326. In order to make this determination, it is necessary for the Court to consider both the frequency and the regularity of performance with which the work in question is completed through

---

**3.** As support for its contention that the *Henderson* test should apply to private corporations in addition to public utilities and governmental organizations, International Paper relies on a Fourth Circuit case, *Pendley v. United States*, 856 F.2d 699 (4th Cir.1988), *cert. denied*, 490 U.S. 1005, 109 S.Ct. 1640, 104 L.Ed.2d 155 (1989), that stated "[W]e think it is clear that in Virginia, under *Henderson*, if a private individual operates a business regulated by statute or regulation, what is 'a part of his trade, business or occupation' is determined by the statutes and reg-

ulations under which he operates." *Pendley*, 856 F.2d at 702. However, the Court notes that *Pendley* involved a governmental entity, the United States Air Force, as the statutory employer, not a private individual or company. Furthermore, to the extent Defendant argues that *Pendley* expands *Henderson's* application to private corporations, the Virginia Supreme Court's *Johnson* decision controls on this issue of Virginia state law and forecloses such an interpretation. *Johnson*, 244 Va. at 485 n. 1, 422 S.E.2d at 780 n. 1.

employees, as opposed to separate contractors. *Bassett Furniture Indus.*, 216 Va. at 903, 224 S.E.2d at 326. If the work is of such a type that International Paper only infrequently and irregularly assigns to its own employees, then the contractors used for such construction work are not statutory employees of the manufacturer. *Id.*

On this point, the Court finds that two Virginia Supreme Court cases define what level of involvement by a company establishes the company as a statutory employer of the crane operators it hires through independent contractors. In *Bassett Furniture Industries*, the Virginia Supreme Court held that a manufacturing company was not the statutory employer of a crane operator' who had been hired through a contractor. *Bassett Furniture Indus.*, 216 Va. at 904, 224 S.E.2d at 327. Bassett, a furniture manufacturing company, had hired an independent crane-operator contractor, for whom the plaintiff employee worked, to assist in installing a large, new conveyor system at the Bassett plant. *Id.* at 899, 224 S.E.2d at 324. In determining that the Bassett manufacturing company was not the plaintiff employee's statutory employer, the *Bassett* court noted that the company maintained no separate construction division and, although Bassett's maintenance division could handle some minor products and installations, the company routinely contracted out large and complex construction tasks to independent contractors. *Id.* at 903, 224 S.E.2d at 327. Furthermore, the *Bassett* court noted that Bassett had never attempted to complete a job of such a magnitude as the conveyer installation and that such construction jobs were "typically outside the custom of the [manufacturing] trade." *Id.* Based on this information, the Virginia Supreme Court concluded that Bassett was not the statutory employer of the plaintiff employee. *Id.* at 904, 224 S.E.2d at 327; *see also Johnson*, 244 Va. at 487, 422 S.E.2d at 781

(holding that when a bank's maintenance crew performed small painting jobs but the bank utilized an independent contractor to erect a scaffolding and paint the outside trim of a building, the bank was not a statutory employer of the independent painting contractor's employees).

In contrast, the Virginia Supreme Court ruled in *Stewart v. Bass Construction Company*, 223 Va. 363, 288 S.E.2d 489 (1982), that, under the facts before it, the manufacturing company was the statutory employer of the crane operator of an independent contractor. In *Stewart*, the manufacturing company, Federal Paper Board, purified and recycled the water it utilized in its manufacturing process through aerators that it operated in lagoons. *Stewart*, 223 Va. at 364, 288 S.E.2d at 489. When one of the aerators needed a repair, the company, as was its custom, obtained a crane and crane operator through an independent contractor in order to assist with the removal of the aerator from the lagoon. *Id.* at 490, 288 S.E.2d at 490. Although the independent contractor provided the crane operator, Federal Paper Board's employees completed a substantial portion of the ground work and supervision during the removal process. *Id.* In ruling on these facts, the *Stewart* court applied the *Shell Oil Co.* test and found that, in this instance, the work of the contractor was of the type routinely done by Federal Paper Board's employees. In reaching this conclusion, the *Stewart* court noted that the removal of the aerator was "a normal maintenance activity" of the company. *Id.* at 366–67, 288 S.E.2d at 490–491. The *Stewart* court further distinguished this case from the circumstances in *Bassett* by noting that the activity the crane operator was involved in was "routine maintenance," not "major construction." *Id.* at 367, 288 S.E.2d at 491.

Turning now to the lawsuit currently before it, the Court concludes that the facts of this case more closely resemble the circumstances found in *Bassett* than in *Stewart.* Although International Paper maintains an in-house maintenance crew of approximately 23 to 24 mechanics and electricians and a staff of two to three independent contractors who operated a small crane, Garrahan, the facility manager of International Paper's Stuart plant, stated in his deposition that no one at the Stuart facility was trained in the operation of a large crane like the one necessary to demolish the silos. (Garrahan Dep. at 25.) Furthermore, both Garrahan and Gwaltney, the general foreman of the Stuart plant at the time of the incident, stated that, while International Paper's own employees had removed a smaller resin silo with the assistance of the on-site contractors, the removal of the boiler fuel silos was a much more difficult and complex operation, given the larger size of the fuel

silos and the partial collapse of one of the fuel silos. (Garrahan Dep. at 57–58; Gwaltney Dep. at 30–31, 34.) In light of Plaintiffs' uncontested proof demonstrating that Defendant did not routinely engage in large-scale demolition projects involving large cranes, the Court finds that the demolition of the fuel silos, far from being routine maintenance such as the activity conducted in *Stewart,* was a major undertaking distinct from the maintenance work usually done by International Paper's Stuart plant employees. Accordingly, the Court concludes that the work performed by Gene Gobble was not of the type ordinarily performed by International Paper's own employees. In light of this determination by the Court, the Defendant does not qualify as a statutory employer of Gene Gobble and thus cannot assert the exclusivity provision of the Virginia Workers' Compensation Act as an affirmative defense to Plaintiffs' lawsuit.[4] Plaintiffs'

**4.** As an alternative argument, Plaintiffs assert that, under conflict of law principles, the Court should utilize the North Carolina Workers' Compensation Act ("North Carolina Act") instead of the Virginia Workers' Compensation Act to analyze International Paper's affirmative defense that it is Gene Gobble's statutory employer and thus protected from suit. *See, e.g., Braxton v. Anco Elec., Inc.,* 100 N.C.App. 635, 640, 397 S.E.2d 640, 643 (1990), *aff'd* 330 N.C. 124, 409 S.E.2d 914 (1991) (holding in a work-related injury tort suit that, although North Carolina choice of law principles required that the *tort* law of Virginia, the state where the injury occurred, be applied, public policy concerns required that North Carolina's workers' compensation law be used to determine whether the case was statutorily barred). Plaintiffs pursue this interpretation because the North Carolina Act defines statutory employer in a way that is more favorable to Plaintiffs. The Court notes, however, that it is unclear under North Carolina law whether the *Braxton* rule applies to these facts, and that such a determination is difficult to make based upon the limited information currently before the Court.

Moreover, further analysis of which law applies is unnecessary because it is the Court's determination that Defendant's affirmative defense cannot succeed under the workers' compensation law of either Virginia or North Carolina. The Court has fully discussed the applicable Virginia law above in its Memorandum Opinion. As to the North Carolina law, the North Carolina courts interpreting the North Carolina Act have determined that a principal or owner company cannot be the statutory employer of an independent contractor's employees. N.C.Gen. Stat. §§ 97–10.1, 97–19; *Mayhew v. Howell,* 102 N.C.App. 269, 273, 401 S.E.2d 831, 833–34 (holding that the North Carolina Act's definition of statutory employer did not include an owner or principal who contracted work out to an independent contractor), *aff'd,* 330 N.C. 113, 408 S.E.2d 853 (1991); *Beach v. McLean,* 219 N.C. 521, 14 S.E.2d 515, 520 (1941) (stating that N.C.Gen.Stat. § 97–19, which states that in some instances a principal contractor is the statutory employer of a subcontractor's employees, "has no application here. [Section 97–19] relates to contractors and subcontractors—not to employers and independent contractors.") Despite the

Motion for Partial Summary Judgment as to Defendant's affirmative defense based on the Virginia Workers' Compensation Act is therefore GRANTED.

## III. CONCLUSION

As Defendant has not demonstrated that a genuine issue of material of fact exists as to whether the Virginia Workers' Compensation Act provides an affirmative defense to Plaintiffs' tort law claims, Plaintiffs' Motion for Partial Summary Judgment as to Defendant's asserted affirmative defense is hereby GRANTED.

An Order consistent with this Memorandum Opinion shall be filed forthwith.

### ORDER

For the reasons stated in the Memorandum Opinion filed contemporaneously herewith,

IT IS ORDERED that Plaintiffs Chad Franklin Gobble and Patricia Jane Duggan Gobble's Motion for Partial Summary Judgment [Document # 34] as to Defendant International Paper Company's fourth affirmative defense, which asserts that the Virginia Workers' Compensation Act, Va.Code Ann. § 65.2–307(A) bars Plaintiffs' lawsuit, is GRANTED.

fact that Plaintiffs argue in their Brief Supporting their Motion for Partial Summary Judgment that Turner was an independent contractor of International Paper for purposes of North Carolina law, Defendant in its Response does not contest this characterization or otherwise argue that the North Carolina Act also provides it thus cannot assert that the North Carolina Act's exclusivity provision bars this lawsuit. Accordingly, in light of the Court's determination that Defendant cannot establish its affirmative defense under the workers' compensation law of either North Carolina or Virginia, it is unnecessary for the Court to further discuss Plaintiffs' choice of law argument.